IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

BONUMOSE BIOCHEM, LLC, a Virginia
limited liability company,

        Plaintiff,

v.

YI-HENG PERCIVAL ZHANG,
individually, and CELL-FREE
BIOINNOVATIONS, INC., a Virginia
corporation,

        Defendants.

CASE NO. 3:17-CV-33

JURY TRIAL DEMANDED

**DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S
<u>FIRST AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................................................ 1

II.  FACTUAL BACKGROUND........................................................................................ 2

   A.  The Parties and Key Players ................................................................................ 2

   B.  CFB and its Tagatose Research ........................................................................... 4

   C.  Mr. Rogers Fails to Obtain Funding for Tagatose and is Relieved as CEO ...................... 5

   D.  Bonumose is Spun Out of CFB........................................................................... 6

III.  LEGAL STANDARD................................................................................................... 7

IV.  ARGUMENT ............................................................................................................... 8

   A.  The FAC Fails to State a Claim for Misappropriation of Trade Secrets. ........................... 9

     i.  Bonumose Does Not Adequately Demonstrate That Its Alleged "Trade Secrets" Are in Fact Trade Secrets. ....................................................................... 9

     ii.  Bonumose Does Not Adequately Plead "Misappropriation."....................................... 13

     iii.  The FAC Does Not Adequately Plead Any Harm to Bonumose as a Result of the Alleged Wrongdoing. ................................................................... 14

   B.  The FAC Fails to State a Claim For Breach of Contract. .................................................. 16

   C.  The FAC Fails to State a Claim for Civil Conspiracy. ...................................................... 17

   D.  The FAC Fails to State a Claim for Conversion. ............................................................... 19

   E.  There Is No Such Thing as a "Declaratory Judgment" Claim; and Declaratory Judgment Is Not an Appropriate Remedy For Any Other Claim. ................................................................. 20

V.  CONCLUSION ........................................................................................................... 21

Defendants Professor Yi-Heng Percival Zhang ("Prof. Zhang") and Cell-Free Bioinnovations, Inc. ("CFB" and, along with Prof. Zhang, "Defendants") submit this opening brief in support of their Rule 12(b)(6) motion to dismiss the First Amended Complaint [D.I. 19] ("FAC") filed by Plaintiff Bonumose Biochem, LLC ("Plaintiff" or "Bonumose") in the above-captioned matter.

## I.     INTRODUCTION

Bonumose asserts a variety of contract and tort claims against Defendants for having allegedly communicated with a research institute regarding unspecified and publicly known production processes for a naturally occurring sweetener, tagatose. As a matter of law, Bonumose has failed to identify any trade secret, allege a breach of any contractual or legal duty, or even allege any resulting harm. The alleged "trade secrets" on which Bonumose centers its allegations not only remain unspecified, but also cannot possibly have existed under the facts of the FAC. To make matters worse, Bonumose has no remedy for any claim because, by its own admission, Bonumose itself publicly disclosed all of the research on which any trade secrets—whatever they are—could have been based. Because the FAC fails to state any claim for which relief can be granted under law, Defendants' Motion to Dismiss should be granted.

The disputes that exist between the parties are not based on the claims of the FAC. The real disputes are centered on Bonumose's failure to meet its own contractual obligations to Defendants under an April, 2016 Agreement by which Defendants permitted Bonumose to commercialize Defendants' own research. That agreement included funding and commercialization milestones that Bonumose now knows it cannot meet.

Having failed to renegotiate that Agreement, Plaintiffs filed this suit as a last-ditch attempt to avoid the consequences of its failure to meet its milestones. Under the terms of the

1

Agreement, the only way Bonumose can be excused from its contractual obligations is if Plaintiffs are in breach of the Agreement as well. This explains the manufactured, desperate claims of the Complaint. So long as this lawsuit is pending—even with full knowledge its claims are baseless—Bonumose hopes to retain a bargaining chip for any further negotiations. Accordingly, by granting Defendants' motion to dismiss, the Court would not only avoid having to resolve legally baseless claims, but also would restore a level playing field for the parties either to move forward under their Agreement or to negotiate a mutually acceptable solution.

## II.    FACTUAL BACKGROUND

### A. The Parties and Key Players

Defendants Prof. Zhang and CFB. Prof. Zhang is a United States citizen who obtained his Ph.D. in Chemical Engineering and Biotechnology from Dartmouth in 2002. *See* FAC ¶ 3. Prof. Zhang has been a faculty member at Virginia Polytechnic Institute and State University ("Virginia Tech") since 2005, and has been a fully tenured Professor at Virginia Tech since 2014. *See id.* Prof. Zhang also has been affiliated with the Tianjin Institute of Industrial Biotechnology in China ("TIB") since 2014. *Id.* ¶ 25. TIB is one of the most respected research institutions in China, and its faculty is renowned worldwide for contributions in biological science.

In 2012, Prof. Zhang founded CFB to develop new ways to produce biological molecules for use in energy production and as nutraceuticals. *See id.* ¶ 4. Prof. Zhang is CFB's majority shareholder, Chairman of the Board, and President. *Id.*

In 2015, under Prof. Zhang's leadership, CFB began research on the production of tagatose, a naturally occurring sugar. *Id.* ¶ 12. Tagatose can be used as a low-calorie sweetener in place of higher calorie sugars such as cane sugar. *Id.* ¶ 19. CFB discontinued its tagatose research in April, 2016. *Id.* ¶¶ 19-20.

2

Plaintiff Bonumose.  Formed no later than April, 2016 by former CFB employees Ed Rogers and Dr. Dan Wichelecki, Bonumose was spun-off from CFB  to continue marketing tagatose.  *See id.* ¶¶ 2, 19.  CFB owns not less than one-third of Bonumose's fully-diluted shares.  Declaration of Evan Budaj ("Budaj Decl.") at Exh. A [Agreement for Asset Sale and Assignment] (the "Agreement"), at 7.[1]  Bonumose has not been successful in commercializing the tagatose research it was founded to pursue.

Ed Rogers.  Mr. Rogers is the former CEO of CFB.  Agreement at 1.  Following his lack of success in commercializing tagatose while at CFB, and with CFB's acquiescence, he founded Plaintiff Bonumose with Dr. Dan Wichelecki.  Agreement at 1, 11.  Mr. Rogers is not mentioned either in Plaintiff's Complaint [D.I. 1] ("Compl.") or the FAC.

Dr. Dan Wichelecki.  Dr. Wichelecki is a former employee of CFB.  *Id.* ¶ 13.  While at CFB, Dr. Wichelecki worked with Prof. Zhang on tagatose synthesis.  *Id.*  Following his tenure at CFB, Dr. Wichelecki assisted Mr. Rogers in the formation of Plaintiff Bonumose.  Agreement at 1.

Tianjin Institute of Industrial Biotechnology ("TIB").  TIB is an academic research institute located in Tianjin, China.  FAC ¶ 25.  It is part of the Chinese government-owned Chinese Academy of Sciences.  *Id.*  TIB was a named defendant in the original Complaint filed by Bonumose.  Compl. ¶ 6.  Bonumose has dropped its allegations against TIB.  FAC.  TIB owns an application for a patent under Chinese law that relates to tagatose synthesis.  *Id.* ¶ 32.

---

[1] Because the Agreement is "integral to and explicitly relied on in the FAC" and Bonumose cannot challenge its authenticity, the Court may properly consider the Agreement on this Motion despite Bonumose's failure to attach it to the FAC.  *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606-07 (4th Cir. 2015).

3

<u>Dr. Chun You</u>. Dr. You is a former employee of CFB who began his employment at TIB in March, 2016, prior to Bonumose's existence. *Id.* ¶ 27. Dr. You worked with both Prof. Zhang and Dr. Wichelecki on tagatose research while he was at CFB. *Id.* Dr. You was a named defendant in the original Complaint filed by Bonumose. Compl. ¶ 5. Bonumose has dropped its allegations against Dr. You. FAC.

### B.  CFB and its Tagatose Research

In January, 2015, Prof. Zhang hired Ed Rogers to be Chief Executive Officer of CFB. *See* Agreement at 1. Rogers' responsibilities included raising money for the company and managing its day-to-day activities, leaving Prof. Zhang to concentrate on his research. Mr. Rogers acquired equity in CFB and a seat on its Board of Directors. *See id.*

In March of 2015, CFB hired Dr. You to assist in Prof. Zhang's tagatose research. *Id.* ¶ 27. In July 2015, CFB hired Dr. Wichelecki to do the same. *Id.* ¶ 13.

Over the summer of 2015, Prof. Zhang and Dr. Wichelecki, with the assistance of Dr. You, developed a two-step enzymatic method for the synthesis of tagatose. *Id.* Believing the method was novel, in October, 2015, CFB filed a provisional patent application in the United States (the "Provisional") naming Prof. Zhang and Dr. Wichelecki as co-inventors. *Id.* ¶¶ 13-14. Specifically, Dr. Wichelecki and Prof. Zhang claimed in the Provisional a method of converting fructose 6-phosphate ("F6P") to tagatose 6-phosphate ("T6P") (step one), and then converting T6P into tagatose (step two). *Id.*

Prof. Zhang would learn, months later, that the enzymatic pathway described in the patent application was not new, and both steps were apparent from previously published literature. The method of and enzyme used for step one (conversion from F6P to T6P) was publicly known at least as early as October 15, 2015 in an article published by Dr. Wichelecki in the Journal of Biological Chemistry. Budaj Decl. at Exh. B [Wichelecki, Daniel J., *et al.*, *ATP-binding*

4

*Cassette (ABC) Transport System Solute-binding Protein-guided Identification of Novel D-Altritol and Galactitol Catabolic Pathways in Agrobacterium tumefaciencs C58*] ("JBC Article").[2] The method of and enzyme used for step two (conversion from T6P to tagatose) was publicly known at least as early as April 6, 2015 in an article published in the Proceedings of the National Academy of Sciences of the United States of America. Budaj Decl. at Exh. C [Huang, Hua, *et al.*, *Panoramic view of a superfamily of phosphatases through substrate profiling*] ("PNAS Article").[3] Although the Provisional may have been the first publication in which those two steps were combined to describe the two-step conversion from F6P to T6P and then T6P to tagatose, the individual steps and enzymes used were neither themselves novel nor unknown to the public. JBC Article; PNAS Article.

The Provisional patent application published on April 6, 2017. FAC ¶ 38. All of the subject matter of the Provisional patent application is, accordingly, public knowledge.

### C. Mr. Rogers Fails to Obtain Funding for Tagatose and is Relieved as CEO

While the patent application was pending, relations between Prof. Zhang and Mr. Rogers soured. *Cf.* FAC ¶ 19; Agreement. Mr. Rogers had failed to make any substantial progress to obtain funding that would allow CFB to develop and commercialize tagatose. Prof. Zhang also was not satisfied with Mr. Rogers' management of CFB's business. In December, 2015, Prof. Zhang relieved Mr. Rogers of his duties as CEO. *Cf.* Agreement at 1.

---

[2] The Court may "consider facts and documents subject to judicial notice without converting [a] motion [to dismiss] into one for summary judgment," so long as they constitute "relevant facts obtained from the public record" and "are construed in the light most favorable to the plaintiff along with the wellpleaded allegations of the complaint." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013).

[3] Like the JBC Article, the PNAS Article is subject to judicial notice and may be considered on this Motion without converting it into a motion for summary judgment. *See* fn. 2, *supra*.

In March of 2016, Dr. You left the employment of CFB. Dr. You had never signed a nondisclosure agreement (NDA) with CFB, so he had no duty to preserve any CFB confidential information, to the extent such information existed. *Cf.* FAC ¶ 27. Later in 2016, after Bonumose was formed, Mr. Rogers asked Dr. You to sign a "business protection agreement" under which Dr. You would have been obligated not to disclose any confidential information he obtained during his employment with CFB, but Dr. You refused.

Dr. You subsequently returned to China and obtained employment with TIB. At TIB, Dr. You worked with Profs. Yan-he Ma and Jibin Sun, who also had been working on the synthesis of tagatose.

In 2016, TIB filed a Chinese patent application directed to tagatose synthesis. FAC ¶ 32. The application included aspects of the publicly-known enzymatic pathway that Dr. You had learned about while employed by CFB. *Id.*

### D. Bonumose is Spun Out of CFB

In the spring of 2016, Prof. Zhang and Mr. Rogers discussed a plan that would spin-off CFB's tagatose commercialization in a new corporate entity, to be run by Rogers. FAC ¶ 19; Agreement at 1. Dr. Wichelecki would join Rogers and work to commercialize tagatose research. *Id.* Prof. Zhang would remain with CFB, but would not be involved in the new entity's work with tagatose. *Id.* In return, Mr. Rogers would resign from CFB's Board of Directors. Agreement at 4.

In early 2016, the spin-off became a reality when Mr. Rogers and Dr. Wichelecki formed Bonumose. FAC ¶ 19; Agreement. That same day, CFB, Prof. Zhang, Bonumose, Mr. Rogers, Dr. Wichelecki, and Terebinth Strategic Management (a Rogers entity) entered into an agreement to govern the relationship between CFB, Bonumose, and their principals. Agreement.

Under the Agreement, CFB agreed to cede tagatose marketing and bulk manufacturing to

Bonumose. Agreement at 1-2. CFB and Prof. Zhang agreed not to compete with Bonumose in the commercialization of tagatose, not to disclose tagatose-related non-public "confidential information" to third parties, and to assign all tagatose IP to Bonumose, including the Provisional patent application. *Id.* at 5-6. In return, Bonumose issued one third of its stock to CFB, *id.* at 7-8, and agreed to meet the following yearly milestones to spur commercialization of tagatose:

1. By April 1, 2017, enter into "a commercial transaction with a Tagatose commercialization partner," *id.* at 9;

2. By April 1, 2018, start up "a Tagatose pilot plant with annual production capacity" between one and two metric tons of Tagatose, *id.*;

3. By April 1, 2019, produce at least five metric tons of Tagatose, *id.*; and

4. By April 1, 2020, produce at least one thousand metric tons of Tagatose and start a plant with annual production capacity of five thousand metric tons, *id.*

Unless CFB or Prof. Zhang breached the Agreement, Bonumose's failure to meet any of the milestones would result in the reversion of all tagatose IP rights to CFB. *Id.* Dr. You was not a party to the Agreement and took on no obligations thereby.

## III. LEGAL STANDARD

If a complaint fails to satisfy Rule 8's requirement that the pleading "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests," *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)), it "must be dismissed" under Rule 12(b)(6) for failing to state a claim upon with relief can be granted, *Twombly*, 550 U.S. at 570.[4] To survive a motion to dismiss, a complaint must allege "enough

---

[4] Internal quotation marks, citations, and alternations omitted, and emphasis added, throughout except where otherwise noted.

facts to state a claim to relief that is plausible on its face." *Id.*

"[A] plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," nor does a complaint that "pleads facts that are merely consistent with a defendant's liability." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 557). Instead, the well-pleaded facts must "permit the court to infer more than the mere possibility of misconduct" and "show[ ]that the pleader is entitled to relief." *Id.* at 679 (quoting FRCP 8(a)(2)).

## IV.  ARGUMENT

Bonumose attempts to assert a litany of counts directed at a singular set of alleged wrongs: Defendants' allegedly communicating with TIB regarding what Bonumose claims are trade secrets. In each case—whether alleged as misappropriation of trade secret, breach of contract, or another tort—Bonumose's overbroad pleading generally fails in three distinct, independent ways to assert a claim upon which relief can be granted. The FAC fails to demonstrate: (1) that Bonumose's alleged "trade secrets" are deserving of trade secret protection; (2) that the acts allegedly committed by Defendants constitute a breach of any obligation (contractual or otherwise); and (3) that Bonumose would be harmed in any way by those alleged breaches. The FAC should be dismissed for each of these reasons.

**A. The FAC Fails to State a Claim for Misappropriation of Trade Secrets.**

Bonumose's trade secret misappropriation claims under both VUTSA and DTSA (Claims III-IV) fail for at least three independent reasons.[5]

First, Bonumose has not properly pled that its alleged "trade secrets" are trade secrets at all. Specifically, in order to show that trade secret protection is warranted, the FAC must—but does not: (1) identify the alleged "trade secrets" with sufficient specificity; (2) plead facts showing that the alleged "trade secrets" were kept confidential; and (3) plead facts showing that the alleged "trade secrets" were not known to the public. *See infra*, Section IV.A.i.

Second, Bonumose has not sufficiently pled that Defendants misappropriated any such "trade secrets" because the FAC fails to plead that any alleged disclosure of "trade secrets" occurred after the time at which Bonumose was formed and obtained an interest in that alleged IP. *See infra*, Section IV.A.ii.

Third, Bonumose has not sufficiently pled any harm stemming from the alleged misappropriation. *See infra*, Section IV.A.iii. Absent such a pleading, there can be no monetary damages. *See* Va. Code Ann. § 59.1-338(a); 18 U.S.C. § 1836(b)(3)(B).

**i. Bonumose Does Not Adequately Demonstrate That Its Alleged "Trade Secrets" Are in Fact Trade Secrets.**

The law provides a high bar to establish that information is deserving of trade secret protection. Three such requirements are at issue here. First, a plaintiff must "describe the subject matter of its alleged trade secrets in sufficient detail to establish each element of a trade secret." *Trandes v. Guy F. Atkinson*, 996 F.2d 655, 661 (4th Cir. 1993), *cert. denied*, 114 S. Ct. 443 (1993). "Although it [is] not necessary for [plaintiff] to disclose all of the details of its trade

---

[5] In all aspects relevant to Bonumose's misappropriation claims, the provisions of the VUTSA and DTSA are substantively identical. They will be treated together in this section, with citations provided to both statutes.

secrets, it [has] to do more than merely note that the [t]echnology involved trade secrets."

*Contract Materials Processing v. Kataleuna GmbH Catalysts*, 164 F.Supp. 2d 520, 234 (D. Md. 2001). Next, the alleged "trade secrets" must not be known to the public. *See* Va. Code Ann. § 59.1-336 (2011) (trade secrets must "not be[] generally known to, and not be[] readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use"); 18 U.S.C. § 1839(3) (same). Lastly, the alleged "trade secrets" must be "the subject of efforts that are reasonable under the circumstances to maintain [their] secrecy." Va. Code Ann. § 59.1-336 (2011); *see* 18 U.S.C. § 1839(3) (requiring for trade secret protection that "the owner thereof has taken reasonable measures to keep such information secret"). Bonumose's allegations of "trade secret" protection fail on all three counts.

Bonumose's list of vaguely alleged trade secrets fails to put Defendants on notice as to the specific "trade secrets" allegedly misappropriated, and fails to demonstrate that these items are protectable trade secrets under either the Virginia Uniform Trade Secrets Act ("VUTSA") or the Defend Trade Secrets Act ("DTSA"). Initially, Bonumose seeks to define the "Tagatose Trade Secrets" as "confidential information and trade secrets relating to proprietary processes for the enzymatic production of Tagatose." FAC ¶ 2. But this broad, circular definition in no way approaches "sufficient detail to establish each element of a trade secret." *Trandes*, 996 F.2d at 661.

In an attempt to identify at least a portion of these alleged "trade secrets" in detail, Bonumose lists four non-exclusive sub-categories of information that it alleges deserve protection. *See* FAC ¶ 16 ("The Tagatose Trade Secrets included, but were not limited to: . . . ."). Bonumose's first category of "trade secret" is "the identity of the two key enzymes making the enzymatic pathway possible." FAC ¶ 16(A). By declining to identify either those two key

10

enzymes or "the enzymatic pathway," the FAC leaves CFB and the Court only to guess at what Bonumose believes is protectable. And to the extent Bonumose refers in Paragraph 16(A) to the two enzymes specified in the Provisional, those enzymes were known to the public long before Bonumose even existed, let alone held any right to the related IP by way of the Agreement. *See* JBC Article; PNAS Article.

Bonumose's second category of alleged "trade secret" is "the novel enzymatic pathway for producing tagatose from starch and the method of using the key enzymes in the pathway." FAC ¶ 16(B). Here again, Bonumose fails to identify which "pathway" and which "method" it believes are protectable as trade secret, and this identification is thus insufficient. To the extent Bonumose refers to any pathway or method described in the Provisional, once again this information was public before Bonumose was even founded. *See* JBC Article; PNAS Article. Specifically, the Provisional describes a pathway that produces tagatose by converting F6P to T6P, and then T6P to tagatose. But the JBC Article, published in 2015, describes the first step of that pathway (conversion from F6P to T6P); the PNAS Article describes the second step (conversion from T6P to tagatose). Because this information was known publicly at all relevant times, it cannot be a "trade secret."

Next, Bonumose identifies as a "trade secret" "the methods Dr. Wichelecki used to verify and optimize the novel enzymatic pathway." FAC ¶ 16(C). Once again, Bonumose fails to identify those "methods" with any particularity, much less direct Defendants to any source material where such methods could be found. This category not only leaves Defendants and the Court to guess what may be included, but also is unreasonably broad. Indeed, this description would seem to cover anything Dr. Wichelecki did, no matter how routine. For example, Dr. Wichelecki's methods could have (and indeed must have) included standard scientific research

steps, such as writing results in notebooks or measuring the concentration of one compound in a greater solution. By seeking to protect broadly *all* "methods Dr. Wichelecki used," Bonumose asks this Court to find that each such step is necessarily deserving of trade secret protection.

Fourth, Bonumose seeks trade secret protection for "the information about two obscure academic papers which contained hard-to-follow clues about the identity of the key enzymes." FAC ¶ 16(D). Not only is this language hopelessly confusing, but also Bonumose seeks protection of "the information about" a subject without identifying what "information" is at issue. This again leaves both Defendants and the Court to merely guess at what might be protectable. And, broadly defined, the "information about" these papers would include for example the names of the authors and years of publication—clearly not Bonumose trade secrets. Most importantly, Bonumose itself admits that the "identification" information is already public, as it is sourced from publically published "academic papers"—specifically, the JBC Article and the PNAS Article. This public "information" cannot be protectable as trade secret, no matter how "obscure."

Moreover, all of Bonumose's trade secret claims are based on the assumption that former CFB employee Dr. Chun You was required to keep the supposed Tagatose Trade Secrets confidential. FAC ¶ 27. Although the FAC makes a general allegation in this regard, it does not plead any facts to support its legal assertion that "Chun You was required to keep the Tagatose Trade Secrets confidential and to not take any action which would constitute a breach of the obligations CFB owed to Bonumose under the April 2016 Agreement." *Id.* It is entirely unclear from this pleading what efforts were made with respect to Dr. You, or how he was "required" not to breach the Agreement (to which he was not a party). Without such well-pled facts, the Court cannot infer that Bonumose truly maintained these alleged "trade secrets" in secret. *Iqbal*, 556

Case 3:17-cv-00033-NKM-JCH   Document 24   Filed 09/11/17   Page 14 of 25   Pageid#: 122

U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations.").

### ii. Bonumose Does Not Adequately Plead "Misappropriation."

Taking the facts pled in the FAC as true, Bonumose still has not shown that Defendants violated or breached any existing obligation. As Bonumose admits in its FAC, until April 1, 2016, CFB and Prof. Zhang had full ownership and control of the alleged trade secrets and related intellectual property. FAC ¶ 19. Additionally, prior to April 1, 2016—when Bonumose did not yet exist and the Agreement had not yet been signed, *id.*—Defendants could not have owed any duty to Bonumose at all (with regard to the alleged trade secrets or otherwise). While the FAC does plead that Defendants communicated with others regarding tagatose (allegedly in violation of its contractual and other obligations), it does not—and cannot—plead that such communication occurred at a time when Defendants owed any duty to Bonumose not to do so.

Each count in the FAC relies at least in part on Bonumose's allegation that Defendants "provided the Tagatose Trade Secrets to the Tianjin Institute."[6] FAC ¶ 28. Critically, Bonumose fails to allege when this communication occurred. Even assuming *arguendo* that such a communication took place at all, consistent with all well-pled facts in the FAC the alleged communication could have occurred before Bonumose existed and before the Agreement was signed—when Defendants held all rights in the alleged trade secrets and could legally make any such communication they wished. Thus Bonumose's pleading is "merely consistent with"

---

[6] Although Bonumose pleads that this communication was "[i]n violation of the obligations under the April 2016 agreement . . ." as well as other law including regarding trade secrets, FAC ¶ 28, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions," *Iqbal*, 556 U.S. at 678. At best, Bonumose pleads that this communication happened "during a time in which the Provisional [] remained unpublished"—meaning any time between October 2, 2015 and April 6, 2017. FAC ¶¶ 14, 28, 38. Only after April 1, 2016 did Defendants owe any duty to Bonumose.

13

Defendants' liability, and lacks the "facial plausibility . . . that allows the court to draw the reasonable inference that [Defendants are] liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Put differently, "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Id.* at 679. In this circumstance, the Supreme Court instructs, "the complaint has alleged—but it has not shown—that the pleader is entitled to relief," *id.*, and thus it "stops short of the line between possibility and plausibility of entitlement to relief" and must be dismissed. *Id.* at 678.[7]

### iii. The FAC Does Not Adequately Plead Any Harm to Bonumose as a Result of the Alleged Wrongdoing.

The FAC makes only one attempt to plead non-speculative damages as a result of any alleged wrongdoing:

> Although the information contained in Bonumose's U.S. patent application is now public owing to publication of the PCT Application in April of 2017, Bonumose was damaged by the prior disclosure and use of the Tagatose Trade Secrets while that information was confidential. The wrongful disclosure of the Tagatose Trade Secrets gave the Tianjin Institute several months of advanced knowledge of confidential information, including, but not limited to, the enzymatic pathway discovered by Dr. Wichelecki.

FAC ¶ 40. But Bonumose does not even attempt to explain or allege facts to show how TIB's alleged "several months of advanced knowledge" resulted in any realized harm to Bonumose.

Abandoning its pleading of past damages, Bonumose next alleges that it "will suffer immediate and irreparable harm" if it is not granted various injunctions. But once again,

---

[7] Related allegations throughout the FAC suffer the same defect. *See* FAC ¶ 29 ("The circumstances indicate Zhang, CFB, and Chun You received compensation or benefits"—at some unknown time—"in exchange for their wrongful disclosure of the Tagatose Trade Secrets"), ¶ 34 ("Zhang and Chun You . . . are asserting a substantive role"—at some unknown time—"in the Tianjin Patent Application"); *see, e.g.*, ¶¶ 53-55, 78, 89 (all failing to allege that Defendants committed any wrongs during the relevant time period after Bonumose existed and acquired certain rights from CFB).

Bonumose fails to plead any facts sufficient to show that such harm will occur. *See id.* ¶¶ 41-42. Indeed, Bonumose itself admits that it has no information to show that these speculative harms will ever be realized: "Legal remedies would be inadequate because without an injunction, Defendants **could** unlawfully compete in the market . . . ." *Id.* ¶ 43. Now that the information allegedly shared with TIB is public of course, *see id.* ¶ 38, anyone "could" compete with Bonumose. The FAC nowhere pleads that any such competition, and any speculative harm that might befall Bonumose thereby, would be affected in any way by the timing of the original alleged disclosure. The FAC wholly fails to show any connection between the alleged wrongdoing and the (highly speculative and future) alleged damages.

Furthermore, Bonumose has not pled facts sufficient to show it is entitled to punitive damages or attorneys' fees. An award of either punitive damages or attorneys' fees requires proof of "willful and malicious misappropriation." *See* Va. Code Ann. § 59.1-338; *American Sales Corp. v. Adventure Travel, Inc.*, 867 F.Supp. 378, 379 (E.D. Va. 1994). To sufficiently plead that Defendants acted with "malice," Bonumose would have to show by well-pled facts "ill will, malevolence, grudge, spite, wicked intention or a conscious disregard of the rights of another" on the part of Defendants. *MicroStrategy, Inc. v. Business Objects, S.A.*, 331 F.Supp. 2d 396, 430 (E.D. Va. 2004). But the FAC does not approach alleging any such facts—at best, it simply recites the words "willful and malicious conduct." *See* FAC ¶¶ 79, 91, 95, 103. Finally, Bonumose cannot be awarded injunctive relief on its misappropriation claims, as even it acknowledges that whatever alleged "trade secrets" might have existed are now known to the public—thus there is nothing to enjoin. *See* FAC ¶ 38. Because Bonumose cannot claim damages, it has not stated a claim for misappropriation on which relief can be granted.

**B. The FAC Fails to State a Claim For Breach of Contract.**

Bonumose's claims for breach of contract also fail for multiple independent reasons.

First, the FAC fails to show that any alleged acts pled therein actually constitute a breach of any contract. As detailed above, Bonumose fails to show that any acts allegedly constituting a breach occurred after the Agreement was signed. *See supra*, Section IV.A.ii. Of course, one cannot breach a contract that does not yet exist. *Ulloa v. QSP, Inc.*, 624 S.E.2d 43, 48 (Va. 2006) (breach of contract claim requires "a legally enforceable obligation of a defendant to a plaintiff").

This same logic also completely bars Bonumose's claim that Prof. Zhang breached his Business Protection Agreement (the "BPA") (count VII). *See* Budaj Decl. at Exh. D [BPA].[8] Although the Agreement does permit Bonumose to "enforce the terms of" the BPA, that right could not exist until Bonumose existed. The Agreement—and the law—does not somehow permit Bonumose to state a claim for any breach that might have occurred before Bonumose existed and acquired the right to enforce the terms of the BPA.

Next, the FAC merely alleges Defendants breached the Agreement by disclosures and/or communications regarding "the Tagatose Trade Secrets"—and in some cases simply unidentified "confidential information." FAC ¶¶ 53-55. But Defendants' non-compete, non-disclosure, and no communication obligations under the Agreement apply to a much narrower set of information. *Compare* FAC ¶ 16 (overbroad definition of "Tagatose Trade Secrets") *and id.* ¶¶ 53-55 (alleging breaches regarding "Tagatose Trade Secrets" and/or unidentified "confidential information") *with* Agreement at 2-3 (narrow definition of "IP RIGHTS" and "ASSIGNED

---

[8] Like the Agreement, the BPA is "integral to and explicitly relied on in the FAC" and Bonumose cannot challenge its authenticity, and thus may be considered on this Motion despite Bonumose's failure to attach it to the FAC. *See* fn. 1, *supra*.

ASSETS") *and id.* at 5-6 (non-compete, non-disclosure, and no communication obligations apply only to IP RIGHTS and ASSIGNED ASSETS). Thus the well-pled facts of the FAC do not plausibly show that Defendants breached the Agreement. Regarding the alleged breach of the non-compete obligation specifically, FAC ¶ 53, Bonumose does not plead that any competition existed, exists, or will exist. The FAC does not plausibly show that such a breach occurred.

Not satisfied to plead the same breach of contract in only three different ways, Bonumose also alleges that Defendants "are in breach of the express terms of the" Agreement, FAC ¶ 57, and "are in breach of the implied covenant of good faith and fair dealing," *id.* ¶ 58. Both of the allegations are merely legal conclusions unsupported by fact that do not suffice to state a claim for relief. *Iqbal*, 556 U.S. at 679. Bonumose's breach of contract claim wholly fails to state a claim on which relief can be granted and should be dismissed.

### C. The FAC Fails to State a Claim for Civil Conspiracy.

Bonumose's civil conspiracy claim (count V) fails for four independent reasons. First, this claim is preempted by the VUTSA, because it is predicated on the acts Bonumose alleges constitute misappropriation of its trade secrets—i.e., the alleged obtaining of Bonumose's allegedly proprietary intellectual proper and the alleged use of that information to file the TIB patent application. *Compare* FAC ¶ 97 (alleging in the only factual pleading of the civil conspiracy claim that Defendants "without justification obtained Bonumose's proprietary information in the production of tagatose and used that information to file the Tianjin Patent Application") *with id.* ¶¶ 78 (alleging that the same constitutes misappropriation of trade secrets under the VUTSA), 89 (same with respect to DTSA). The VUTSA preempts both common law and statutory civil conspiracy claims predicated on alleged misappropriation of trade secrets.

*MicroStrategy*, 429 F.3d at 1362-64 (Fed. Cir. 2005) (applying Virginia law).[9]

Second, to properly allege civil conspiracy, a plaintiff must show that two or more persons acted "by some concerted action" (if the claim is for common law conspiracy) or that they "combine, associate, agree, mutually undertake or concert together" (if the claim is for statutory business conspiracy, Va. Code § 18.2-499). *Alliance Tech. Group, LLC v. Achieve 1, LLC*, 2013 U.S. Dist. LEXIS 4708, at *27-29 (E.D. Va. Jan. 11, 2013). But the FAC merely asserts that Defendants each performed the complained-of actions—it does not even purport to show any "concerted action" took place. The FAC's conclusory allegations are insufficient. *See, e.g., TradeStaff & Co. v. Nogiec*, 2008 WL 8201050, *5 (Va. Cir. Ct. 2008) ("[B]oth statutory and common law conspiracy claims must be pled with particularity and not mere conclusory language"); *Schlegel v. Bank of Am., N.A.*, 505 F. Supp. 321, 329 (W.D. Va. 2007) ("Plaintiff must plead business conspiracy with particularity"); *Kylin Network (Beijing) Movie & Culture Media Co. Ltd v. Fidlow*, 2017 WL 2385343, at *4 (E.D. Va. June 1, 2017) (granting Rule 12(b)(6) motion to dismiss business conspiracy claim because claimant did not allege "the requisite concert of action and unity of purpose in more than 'mere conclusory language'"). Third, to properly plead a civil conspiracy, the FAC must show that Defendants acted "willfully and maliciously." Va. Code Ann. § 18.2-499(a). But as set forth above, Bonumose does not

---

[9] Because the trade secrets claim fails, Bonumose has no underlying unlawful or criminal act upon which to base its conspiracy claim. *See Taylor v. CNA Corp.*, 782 F. Supp. 2d 182, 204 (E.D. Va. 2010) ("in Virginia, a common law claim of civil conspiracy generally requires proof that the underlying tort was committed"). As the Supreme Court of Virginia has repeatedly held, "there can be no conspiracy to do an act the law allows." *Hechler Chevrolet v. General Motors Corp.*, 230 Va. 396, 402, 337 S.E.2d 744 (1985). Moreover, to the extent Bonumose argues its civil conspiracy claim is instead predicated on the alleged breaches of contract, it still fails. A "conspiracy merely to breach a contract that does not involve an independent duty arising outside the contract is insufficient to establish a civil claim under § 18.2-500." *Dunlap v. Cottman Transmission Sys., LLC*, 287 Va. 207, 217 (2014).

even attempt to plead the requisite "ill will, malevolence, grudge, spite, wicked intention or a conscious disregard of the rights of another" on the part of Defendants, *MicroStrategy, Inc. v. Business Objects, S.A.*, 331 F.Supp. 2d 396, 430 (E.D. Va. 2004)—it merely recites the legal conclusion that they acted "willfully and maliciously," FAC ¶ 95. *See supra*, Section IV.A.iii. This conclusory pleading is insufficient to state a claim for relief. *Iqbal*, 556 U.S. at 679.

Finally, as set forth above, Bonumose does not allege how it has been harmed by any alleged conspiracy. *See supra*, Section IV.A.iii. For each of these independent reasons, the civil conspiracy claim fails.

### D. The FAC Fails to State a Claim for Conversion.

Bonumose's allegation of conversion (count VI) fails to state a claim for relief for at least three independent reasons. First, like the civil conspiracy claim above, Bonumose's conversion claim is preempted by the VUTSA because it is predicated on the acts Bonumose alleges constitute misappropriation of its trade secrets. *Compare* FAC ¶ 102 (alleging in the only factual pleading of the conversion claim that Defendants "wrongfully exercised dominion or control over the information required for the production of Tagatose") *with id.* ¶¶ 78 (alleging that the same constitutes misappropriation of trade secrets under the VUTSA), 89 (same with respect to DTSA); *see* Va. Code Ann. § 59.1-341.[10]

Second, "[g]enerally, conversion applies only to tangible property, though many courts have recognized conversion claims where intangible property rights are merged with a document

---

[10] Again, as with the civil conspiracy claim, to the extent Bonumose argues this claim is instead predicated on the alleged breaches of contract, courts have held that a conversion claim fails when a party alleges wrongdoing co-extensive with existing contractual obligations. *See, e.g.*, *Command Cinema Corp. v. VCA Labs, Inc.*, 464 F.Supp. 2d 191, 199 (S.D.N.Y. 2006); *cf. Condominium Services, Inc. v. First Owners' Assoc.*, 281 Va. 561 (2011) (affirming verdict for breach of contract and separate conversion claim based only on acts after the termination of the contract).

. . . ." *Alliance Tech. Group*, 2013 U.S. Dist. LEXIS 4708, at *21 n.6 (E.D. Va. Jan. 11, 2013). Here, Bonumose alleges only that Defendants converted "information."  FAC ¶ 102.  Courts in this district have specifically held that the unauthorized use of secret information alone cannot give rise to an action for conversion where that information was not "merged in a document." *Hinkle Oil & Gas, Inc. v. Bowles Rice McDavid Graff & Love, LLP*, 617 F.Supp. 2d 447, 453-55 (W.D. Va. 2008); *see James River Mgmt. Co. v. Kehoe*, 2009 U.S. Dist. LEXIS 107847, at *24-25 (E.D. Va. Nov. 17, 2009) (finding conversion claim insufficiently pled where it did not identify "what the property was, and whether it arises from or is merged with a document and, if so, what document").  Because "information" is not tangible, and there is no allegation that this "information" was merged with any document that was allegedly converted, the conversion claim fails.

Third, as set forth above, Bonumose does not allege how it has been harmed by any alleged conversion.  *See supra*, Section IV.A.iii.  For each of these reasons, the conversion claim must fail.

### E.  There Is No Such Thing as a "Declaratory Judgment" Claim; and Declaratory Judgment Is Not an Appropriate Remedy For Any Other Claim.

Bonumose's "claim" of declaratory judgment fails at least because "a declaratory judgment is a remedy and not a right of action."  *Healy v. Chesapeake Appalachia, LLC*, 2011 U.S. Dist. LEXIS 759, at *47 (W.D. Va. Jan. 5, 2011).  Even as a remedy, however, Bonumose's pleading for declaratory judgment would still fail because Bonumose has an "adequate, alternative remedy in another form of action"—an action at law for breach of contract.  *Jones v. Jones*, 206 F.Supp. 3d 1098, 1113 (E.D. Va. 2016) ("[D]eclaratory judgment is generally unavailable when claims and rights asserted have fully matured, and the alleged wrongs have

20

already been suffered," and "a declaratory judgment serves no useful purpose when it seeks only to adjudicate an already-existing breach of contract claim.").

That Bonumose would seek such a clearly improper cause of action as a claim for "declaratory judgment" speaks to the true nature of this lawsuit. If Bonumose were to succeed on its breach of contract claim—though it cannot—the express terms of the Agreement would prohibit CFB from executing on its reversionary rights in the tagatose-related IP. Agreement at 9 (if "BONUMOSE fails to meet one or more of the MILESTOES . . . *and [] CFB and Zhang are not in breach of any terms in this agreement*, CFB shall have . . . a non-exclusive right to use the Tagatose IP RIGHTS and develop competing tagatose technology for marketing . . . ."). As demonstrated herein, Bonumose makes claim after claim all seeking the same thing—some ruling from this Court that it can use to prevent CFB from retaking the rights to the tagatose technology. Indeed, Defendants' investigation has thus far shown, and Defendants intend to plead in any Counterclaims against Bonumose, that Bonumose has completely failed to meet its milestones pursuant to the Agreement. Far from being an implication of merit, the plethora of claims leveled in the FAC against Defendants is indicative of Bonumose's desperation to continue pursuing its failed business goals and escape the terms of the Agreement it does not like. This Court should not only dismiss this improper "declaratory judgment" claim, but all claims in the FAC.

## V.    CONCLUSION

For the reasons set forth herein, Defendants' Motion should be granted and Bonumose's FAC should be dismissed with prejudice.

Respectfully submitted,

YI-HENG PERCIVAL ZHANG AND
CELL-FREE BIOINNOVATIONS, INC.

/s/ _____
Nathan A. Evans (VSB No. 46840)
Joshua F. P. Long (VSB No. 65684)
Woods Rogers PLC
123 East Main Street, Suite 500
Charlottesville, VA 22902
Tel: 434-220-6829
Tel: 540-983-7725
Fax: 434-220-5687
nevans@woodsrogers.com
jlong@woodsrogers.com

James E. Hopenfeld (*admitted pro hac vice*)
Evan N. Budaj (*admitted pro hac vice*)
Singer Bea LLP
601 Montgomery Street, Ste. 1950
San Francisco, CA 94111
Tel: 628-400-4125
Tel: 202-656-5097
Fax: 415-500-6080
jhopenfeld@singerbea.com
ebudaj@singerbea.com

*Counsel for Yi-Heng Percival Zhang and Cell-Free
Bioinnovations, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on this Eleventh day of September, 2017, a true and accurate copy of the above and foregoing **DEFENDANTS' BRIEF IN SUPPORT OF THEIR MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

By: /s/_____
   Nathan A. Evans (VSB No. 46840)
   Joshua F. P. Long (VSB No. 65684)
   Woods Rogers PLC
   123 East Main Street, Suite 500
   Charlottesville, VA 22902
   Tel: 434-220-6829
   Tel: 540-983-7725
   Fax: 434-220-5687
   nevans@woodsrogers.com
   jlong@woodsrogers.com

   James E. Hopenfeld (*admitted pro hac vice*)
   Evan N. Budaj (*admitted pro hac vice*)
   Singer Bea LLP
   601 Montgomery Street, Ste. 1950
   San Francisco, CA 94111
   Tel: 628-400-4125
   Tel: 202-656-5097
   Fax: 415-500-6080
   jhopenfeld@singerbea.com
   ebudaj@singerbea.com

   *Counsel for Yi-Heng Percival Zhang and Cell-Free Bioinnovations, Inc.*