**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
Charlottesville Division**

| | |
|---|---|
| BONUMOSE BIOCHEM LLC, a Virginia limited liability company, | Civil Action No. 3:17-cv-00033 |
| Plaintiff, | Judge Glen E. Conrad |
| vs. | **PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |
| YI-HENG PERCIVAL ZHANG, individually, and CELL-FREE BIOINNOVATIONS, INC., a Virginia corporation, | |
| Defendants. | |

TABLE OF CONTENTS

Page

I.     INTRODUCTION ......................................................................................... 1

II.    LEGAL STANDARD................................................................................... 2

III.   FACTUAL BACKGROUND ....................................................................... 2

IV.    ARGUMENT ............................................................................................... 5

       A.    Bonumose Has Pled Valid Misappropriation of Trade Secrets Claims................. 5

             1.    Bonumose Has Identified Its Trade Secrets with Sufficient Detail ........... 5

                   a.    The Subject Matter of the Trade Secrets Is Pled Sufficiently......... 5

                   b.    Bonumose Pled that the Trade Secrets Were Not Public............... 6

                   c.    The FAC Alleges that the Trade Secrets Were Sufficiently
                         Guarded Against Disclosure .......................................... 9

             2.    Bonumose Has Pled that the Trade Secrets Were Misappropriated ......... 10

             3.    Bonumose Has Pled that It Was Harmed.................................. 11

                   a.    Bonumose Is Entitled to Damages and Injunctive Relief............. 11

                   b.    The Punitive Damages and Attorney Fees Remedies Should Not
                         Be Dismissed ..................................................... 14

       B.    Both of Bonumose's Breach of Contract Claims Are Pled Sufficiently.............. 15

       C.    Bonumose Sufficiently Alleges Tort Claims for Conspiracy and Conversion ..... 18

             1.    Defendants' Preemption Argument Fails Because Defendants Contend
                   that the Materials at Issue Are Not Trade Secrets.................... 18

             2.    Bonumose States a Valid Conspiracy Claim ........................... 19

             3.    Bonumose Properly Pleads a Conversion Claim ....................... 20

       D.    Bonumose States a Valid Claim for Declaratory Judgment ................ 23

(FAC ¶ 71.) ...................................................................................... 24

       E.    Defendants Attempt to Distract the Court with Assertions Outside the Pleadings,
             Mischaracterizations of Attached Documents, and Conspiracy Theories Targeting
             Bonumose's CEO; These Tactics Are Improper and Should Be Rejected.......... 25

V.     CONCLUSION........................................................................................... 26

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Adkins v. EQT Prod. Co.*,
 No. 1:11-cv-00031, 2011 WL 6178438 (W.D. Va. Dec. 13, 2011) ........................................23

*Alliance Tech. Group, LLC*,
 No. 3:12-cv-701-HEH, 2013 WL 143500 (E.D. Va. Jan. 11, 2013) ......................................18

*American Sales Corp. v. Adventure Travel, Inc.*,
 867 F. Supp. 378 (E.D. Va. 1994) ......................................................................................14

*Bell Atlantic Corp. v. Twombly*,
 550 U.S. 544 (2007)..........................................................................................................2, 5

*Broadhead v. Watterson*,
 5:15-cv-00020, 2016 WL 742127 (W.D. Va. Feb. 24, 2016)..........................................19, 20

*Carter v. Am. Note Serv.*,
 No. 5:14-cv-00003, 2014 WL 2002829 (W.D. Va. May 15, 2014).......................................23

*Chisolm v. Transouth Fin. Corp.*,
 95 F.3d 331 (4th Cir. 1996) ..................................................................................6, 10, 16

*Clark v. BASF Salaried Emps.' Pension Plan*,
 329 F. Supp. 2d 694 (W.D.N.C. 2004) ............................................................................5 n.1

*Clatterbuck v. City of Charlottesville*,
 708 F.3d 549 (4th Cir. 2013) ..................................................................................2, 7, 8, 25

*Combined Ins. Co. of Am. v. Wiest*,
 578 F. Supp. 2d 822 (W.D. Va. 2008) (Conrad, J.)................................................8, 18, 21, 22

*Contracts Materials Processing, Inc. v. Kataleuna GMBH Catalysts*,
 164 F. Supp. 2d 520 (D. Md. 2001) ......................................................................................6

*FDIC v. Baldini*,
 983 F. Supp. 2d 772 (S.D. W. Va. 2013)................................................................................2

*Fette v. Acelle, Inc.*,
 No. 12-cv-3733-ELH, 2013 WL 500497 (D. Md. Feb. 8, 2013)............................................5

*Harleysville Ins. Co. v. Holding Funeral Home, Inc.*,
 No. 1:15CV00057, 2016 WL 4703755 (W.D. Va. Sept. 8, 2016)....................................23, 24

*Hill Holliday Connors Cosmopulos, Inc. v. Greenfield*,
    433 F. App'x 207 (4th Cir. 2011) ............................................................9

*Hinkle Oil & Gas, Inc. v. Bowles Rice McDavid Graff & Love, LLP*,
    617 F. Supp. 2d 447 (W.D. Va. 2008) ....................................................22

*Int'l Paper Co. v. Gilliam*,
    63 Va. Cir. 485 (Va. Cir. Ct. 2003)...........................................18, 21, 22

*James River Mgmt. Co. v. Kehoe*,
    2009 U.S. Dist. LEXIS 107847 (E.D. Va. Nov. 17, 2009)......................22

*Machnik v. U.S. Dep't of Interior*,
    No. 1:16-cv-104, 2016 WL 8451469 (W.D.N.C. Nov. 26, 2016)...........10

*Marsteller v. ECS Fed., Inc.*,
    No. 1:13-cv-593, 2013 WL 4781786 (E.D. Va. Sept. 6, 2013)...............22

*Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*,
    674 F.3d 369 (4th Cir. 2012) ..................................................................25

*MicroStrategy Inc. v. Bus. Objects, S.A.*,
    429 F.3d 1344 (Fed. Cir. 2005)...............................................................18

*MicroStrategy, Inc. v. Business Objects, S.A.*,
    331 F. Supp. 2d 396 (E.D. Va. 2004) ......................................................14

*Penn Mut. Life Ins. Co. v. Berck*,
    No. DKC 09-0578, 2010 WL 1233980 (D. Md. Mar. 23, 2010)......11, 22

*Polo v. Innoventions Int'l LLC*,
    No. 13-CV-830-ABC, 2013 WL 12136601 (C.D. Cal. Sept. 4, 2013)......2

*Pre-Fab-Steel Erectors, Inc. v. Stephens*,
    No. 6:08-cv-00039, 2009 WL 891828 (W.D. Va. Apr. 1, 2009)............20

*S & S Computs. & Design, Inc. v. Paycom Billing Servs., Inc.*,
    No. 500CV00058, 2001 WL 515260 (W.D. Va. Apr. 5, 2001)...............14

*Star City Comics & Games, Inc.*,
    No. 7:10-cv-00417, 2010 WL 5186713 (W.D. Va. Dec. 9, 2010) (Conrad, J.) ...................5, 8

*Tobey v. Jones*,
    706 F.3d 379 (4th Cir. 2013) ............................................................2, 5, 10

*Trandes v. Guy F. Atkinson*,
    996 F.2d 655 (4th Cir. 1993) ....................................................................6

## STATUTES

18 U.S.C. § 1836(b)(3) ....................................................................................11

28 U.S.C. § 2201(a) .........................................................................................23

VA Code Ann. § 59.1-338 ...............................................................................11

Virginia Uniform Trade Secrets Act............................................................ *passim*

## RULES

Federal Rules of Civil Procedure Rule 8(a)(2) ..............................................5

Federal Rules of Civil Procedure Rule 12(b)(6) ..................................2, 8, 18

## OTHER AUTHORITIES

Joshua F.P. Long & Beth Burgin Waller, *Not So Secret Anymore:  The Defend
   Trade Secrets Act of 2016 Gives Strong New Protections for Enforcing Trade
   Secret Misappropriation*, May 12, 2016, available at
   www.woodsrogers.com/not-secret-anymore/ .......................................12

COMES NOW Plaintiff Bonumose Biochem LLC ("Bonumose"), by and through its attorneys of record, Holland & Hart LLP, and submits this Opposition to the Motion to Dismiss Plaintiff's First Amended Complaint ("FAC", available at ECF No. 19) filed by Defendants Yi-Heng Percival Zhang ("Zhang") and Cell-Free Bioinnovations, Inc. ("CFB"; collectively with Zhang, "Defendants").

## I.        INTRODUCTION

In their Motion to Dismiss, Defendants Zhang and CFS pursue two primary tactics: (1) try to distract the Court with pages of assertions of alternative facts, attached documents, and hypotheticals, and (2) assert pleading and particularity standards that simply do not apply.  The tactics should be rejected.

As explained in detail in Bonumose's FAC, Defendants have breached their contractual obligation to Bonumose and have disclosed to a Chinese entity valuable confidential information about the production of Tagatose, a healthier alternative to table sugar, that Bonumose spent considerable resources to acquire and develop.  As a result of that and other wrongdoing by Defendants, Bonumose has requested injunctive, declaratory, and monetary relief and has pled claims for breach of contract, declaratory judgment, misappropriation of trade secrets, conspiracy, and conversion.  Defendants seek dismissal of each of these claims, though they offer little more than quibbles regarding whether the claims are pled with "sufficient specificity" and "particularity."  (*See, e.g.*, Defendants' Brief in Support of Mot. to Dismiss ("Br."), ECF No. 24 at 9 & 11.)  But, in doing so, Defendants misapprehend the applicable pleading standard and, in some cases, ignore the well-pled facts of the FAC.  The FAC contains sufficient detail to set forth a short and plain statement of each claim and Bonumose's entitlement to relief under those claims.  That is sufficient under the Federal Rules of Civil Procedure, and Defendants' motion to dismiss should be denied.

## II.       LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure "is designed to test only the sufficiency of the plaintiff's allegations." *FDIC v. Baldini*, 983 F. Supp. 2d 772, 784 (S.D. W. Va. 2013). Such a motion "does not resolve contests surrounding facts, the merits of a claim, or the applicability of defenses." *Tobey v. Jones*, 706 F.3d 379, 387 (4th Cir. 2013) (citation omitted). To survive a motion to dismiss under Rule 12(b)(6), "[a] complaint need only 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

"Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, on a motion to dismiss." *Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013) (reversing district court that considered video archives of city council meetings on a motion to dismiss). Although there is a "narrow exception . . . that allows a court to consider facts and documents subject to judicial notice" and requires the facts to be "construed in the light most favorable to the plaintiff along with the well-pleaded allegations of the complaint," a defendant cannot simply attach any document to a motion to dismiss and have it be judicially noticed. *Id.* For example, it was improper for Defendants to seek judicial notice of unspecified portions of two scientific articles. (*See* Br. 4–5); *see also Polo v. Innoventions Int'l LLC*, No. 13-CV-830-ABC (RNBx), 2013 WL 12136601, at *3 n.4 (C.D. Cal. Sept. 4, 2013) (striking request for judicial notice and explaining: "Defendant submitted scientific literature to demonstrate the health benefits of stevia and asked the Court to take judicial notice of it. Such evidence is clearly irrelevant to a motion to dismiss.").

## III.      FACTUAL BACKGROUND

Bonumose owns the rights to valuable confidential information and trade secrets relating to proprietary processes for the enzymatic production of Tagatose ("Tagatose Trade Secrets"). (FAC ¶ 2.) Tagatose is a naturally occurring sugar, which although nearly as sweet as sucrose, is lower in calories and does not lead to many of the major health issues associated with sucrose consumption. (*Id.* ¶ 9.) Although Tagatose has not yet been used widely, due primarily to the

high costs of commercial production, if the costs of producing Tagatose can be reduced there is a multi-billion-dollar annual global market for the product owing to tremendous demand for the commercialization of natural alternatives to sucrose.  (*Id.* ¶¶ 10–11.)

In 2015, CFB, a Virginia corporation formed by Zhang and others, was researching the production of Tagatose and other naturally occurring sugars.  (*Id.* ¶¶ 4, 12.)  On July 1, 2015, CFB hired Dr. Daniel Wichelecki, who invented certain processes relating to the enzymatic production of Tagatose that were materially different than the processes CFB previously had considered ("Tagatose Invention").  (*Id.* ¶ 13.)  Using two unique enzymes, Dr. Wichelecki created a complete enzymatic pathway for the production of high-yields of tagatose from low-cost feedstocks.  (*Id.* ¶ 13.)  Dr. Wichelecki's Tagatose Invention is a central component of the Tagatose Trade Secrets and Bonumose has invested significant time and resources to commercialize the findings relating to the Tagatose Invention.  (*Id.* ¶¶ 13, 23.)

CFB filed a U.S. provisional patent application for "Enzymatic Synthesis of D-Tagatose" ("Provisional Patent Application"), which named Dr. Wichelecki as the lead inventor and Zhang as a co-inventor, on October 2, 2015.  (*Id.* ¶ 14.)  The Provisional Patent Application was not published and CFB (and, subsequently, Bonumose) protected and kept confidential the information within the Provisional Patent Application that constituted Tagatose Trade Secrets. (*Id.* ¶¶ 15, 17, 21.)  Zhang was party to a Business Protection Agreement with CFB which, among other things, obligated him not to disclose CFB confidential information or compete with CFB.  (*Id.* ¶ 18.)

On April 1, 2016, Bonumose acquired certain intellectual property rights, including the Tagatose Trade Secrets and confidential information relating to the Tagatose Invention, from Zhang and CFB under an Agreement For Asset Sale And Assignment (the "April 2016 Agreement").  (*Id.* ¶ 19.)  Under the terms of the April 2016 Agreement, Zhang and CFB agreed not to compete against Bonumose regarding the commercialization of Tagatose, not to disclose to anyone any confidential information, trade secrets, or other information about the production of Tagatose, to defend Bonumose's rights to the trade secrets and confidential information

(including the Tagatose Trade Secrets), and to immediately cease communications with third parties regarding the production of Tagatose. (*Id.* ¶ 20.) However, in direct violation of the April 2016 Agreement, Zhang and CFB disclosed confidential information, including the Tagatose Trade Secrets, to Zhang's Chinese employer—the Tianjin Institute. (*Id.* ¶¶ 25, 28–29, 53.) The wrongful disclosure of the Tagatose Trade Secrets gave the Tianjin Institute advance knowledge of confidential information, including the enzymatic pathway discovered by Dr. Wichelecki. (*Id.* ¶ 40.)

In September of 2016, Bonumose filed a Patent Cooperation Treaty patent application ("PCT Application") that covered the Tagatose Trade Secrets and listed China as one of the covered countries. (*Id.* ¶¶ 30–31.) The information regarding the Tagatose Trade Secrets remained confidential despite the filing of the PCT Application. (*Id.* ¶ 31.) On November 1, 2016, the Tianjin Institute filed a near identical patent application for Tagatose production ("Tianjin Patent Application") which could not have been written without access to the confidential, unpublished Provisional Patent Application or Tagatose Trade Secrets. (*Id.* ¶¶ 32–35.) Not only does the Tianjin Patent Application not provide any significant, new information not contained in Bonumose's Provisional Patent Application, the drawings in the Tianjin Patent Application are nearly identical to the drawings in the Provisional Patent Application and the two key enzymes named in the Tianjin Patent Application are the exact same enzymes Dr. Wichelecki had discovered. (*Id.* ¶ 36.)

The Tagatose Trade Secrets were publicly disclosed with Bonumose's knowledge and authorization for the first time on April 6, 2017, when the PCT Application was published. (*Id.* ¶ 38.) Although the information contained in Bonumose's U.S. tagatose patent application is now public owing due to the publication of the PCT Application, Bonumose sued Zhang and CFB to recover damages related to their breaches of contract and the prior disclosure and use of the Tagatose Trade Secrets while that information was confidential. (*Id.* ¶ 40.)

## IV.      ARGUMENT

### A.     Bonumose Has Pled Valid Misappropriation of Trade Secrets Claims

#### 1.      Bonumose Has Identified Its Trade Secrets with Sufficient Detail

Defendants' principal argument for why Bonumose's trade secret claims should be
dismissed is that Bonumose has not pled those claims with sufficient detail.  (*See* Br. 9–15.)
Defendants overstate the requirements of the federal notice pleading standard, and their
argument should be rejected.

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only a "short and plain
statement of the claim showing that the pleader is entitled to relief."  "*Iqbal* and *Twombly* did not
abolish the principle of notice pleading."  *Fette v. Acelle, Inc.*, No. 12-cv-3733-ELH, 2013 WL
500497, at *1 (D. Md. Feb. 8, 2013).  Rather, "[t]he *Twombly* Court underscored that a plaintiff
is not required to include 'detailed factual allegations in order to satisfy' Rule 8(a)(2)."  *Id.*
(quoting *Twombly*, 550 U.S. at 555).  Further, on a motion to dismiss, "all reasonable inferences"
are drawn in a plaintiff's favor.  *Tobey*, 706 F.3d at 383.

##### a.      The Subject Matter of the Trade Secrets Is Pled Sufficiently

Because of these principles, this Court previously has denied a motion to dismiss where
the complaint identified the trade secrets at issue as "business system information, operations
manual, customer contact information, and other confidential and proprietary information."  *Star
City Comics & Games, Inc.*, No. 7:10-cv-00417, 2010 WL 5186713, at *6 (W.D. Va. Dec. 9,
2010) (Conrad, J.); Case No. 7:10-cv-00417-GEC-mfu, ECF No. 4 at ¶ 37.[1]

These categories of trade secrets are far vaguer and more general than the trade secrets
identified by Bonumose.  Bonumose pleads that it had trade secrets including:

- "trade secrets relating to proprietary processes for the enzymatic production of
Tagatose" (FAC ¶ 2);

- "information within the Provisional Patent Application" (FAC ¶ 15);

---

[1] The Court may take judicial notice of a complaint in the public files of the federal court.  *See
Clark v. BASF Salaried Emps.' Pension Plan*, 329 F. Supp. 2d 694, 697 (W.D.N.C. 2004).

- "the identity of the two key enzymes making the enzymatic pathway viable" (FAC ¶ 16A);

- "the novel enzymatic pathway for producing Tagatose from starch and the method of using the key enzymes in the pathway" (FAC ¶ 16B);

- "the methods Dr. Wichelecki used to verify and optimize the novel enzymatic pathway" (FAC ¶ 16C); and

- "the information about two obscure academic papers which contained hard-to-follow clues about the identity of the key enzymes" (FAC ¶ 16D).

Thus, to the extent Defendants argue that Bonumose has not identified sufficiently the subject matter of its trade secrets, their argument should be rejected. Indeed, Defendants' contention that the subject matter of the trade secrets must be identified with "particularity" (*see* Br. 11) is misplaced at the pleading stage.

The cases cited by Defendants do not compel a different result. In *Trandes v. Guy F. Atkinson*, 996 F.2d 655, 661 (4th Cir. 1993), a post-trial appeal, the plaintiff "averred nothing more than that it possessed secret 'formulas,'" even through trial. *Contracts Materials Processing, Inc. v. Kataleuna GMBH Catalysts*, 164 F. Supp. 2d 520, 534 (D. Md. 2001) also did not involve a motion to dismiss, but, rather, involved an instance in which the plaintiff, in opposing summary judgment, provided no "detail or description of what it claim[ed] to be trade secrets." Instead, the plaintiff simply wrote "CMP notes that very valuable trade secrets are involved." *Id.* Bonumose has done more at the pleading stage than the plaintiffs in those cases were able to do much further along in their cases: Bonumose has articulated the subject matter of its trade secrets and provided much more detail than simply claiming that it possesses "very valuable trade secrets" or "secret formulas."

b.    Bonumose Pled that the Trade Secrets Were Not Public

It is well settled that, on a motion to dismiss, a court "must accept the well-pled allegations of the complaint as true, and . . . must construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiffs." *Chisolm v. Transouth Fin. Corp.*, 95 F.3d 331, 334 (4th Cir. 1996). Defendants ignore this principle and ask the Court to disregard

the allegations of the FAC, arguing that extrinsic evidence suggests that some—though, significantly, not all—of Bonumose's trade secrets were known to the public.  (*See* Br. 11–12.)  This argument necessarily fails.

Bonumose clearly alleges in its operative complaint that its trade secrets were confidential and not known to the public.  Bonumose summarizes this point by alleging that the trade secrets:

> were sufficiently secret to derive economic value, actual or potential, from not being generally known to other persons who can obtain economic value from their disclosure or use.  During the time of the wrongful conduct, this information was not readily available from any one public source, and would not be readily ascertainable through proper means by those outside of Bonumose.

(FAC ¶ 76.)

Bonumose provides factual support for this confidentiality throughout the FAC.  For example, Bonumose alleges:

> In accordance with proper procedures, the Bonumose PCT Application was not immediately published; the information regarding the Tagatose Trade Secrets remained confidential despite the filing of the PCT Application. . . .
>
> On or about April 6, 2017, the PCT Application was published.  The publication of the PCT application in April of 2017 marked the first time the Tagatose Trade Secrets were publicly disclosed with Bonumose's knowledge and authorization.

(FAC ¶¶ 31 & 38.)

Rather than confine themselves to a review of the allegations within the FAC, Defendants submitted two scientific articles and argue—without providing any page citations or pointing to any language within those articles—that the articles show that some of Bonumose's trade secrets were publicly known.  (*See* Br. 4–5 n.2 & n.3.)  Relying only on the *Clatterbuck* decision from the Fourth Circuit, Defendants ask the Court to take judicial notice of the articles, though Defendants do not specify whether they want the Court to take judicial notice of their mere existence or the statements contained within the articles.  To the extent Defendants seek judicial notice of certain as-yet-unspecified statements within those articles, *Clatterbuck* undermines, rather than supports, Defendants' position.

In *Clatterbuck*, the district court relied upon statements made in a publicly-available record of a city council meeting to determine that a city ordinance was constitutional. 708 F.3d at 557. Consequently, the district court dismissed the plaintiffs' claims that challenged the constitutionality of the ordinance. Although the Fourth Circuit acknowledged that there is a "narrow exception" that permits a court to consider facts and documents subject to judicial notice on a motion to dismiss, it reversed the lower court, explaining that "whether information is the proper subject of judicial notice depends on the use to which it is put." *Id.* at 558–59. "On a motion pursuant to Rule 12(b)(6), the court's task is to test the legal feasibility of the complaint without weighing the evidence that might be offered to support or contradict it." *Id.* at 559. Thus, "[i]n considering these statements [from the public meeting records] as evidence supporting the government's non-censorial purpose, the district court erred by impermissibly reaching outside the pleadings to make findings of fact." *Id.* at 557.

Defendants invite the Court to make the same error that led to reversal in *Clatterbuck*. They are asking the Court to evaluate unspecified portions of the articles and weigh them against the well-pled allegations of the FAC. The Court is not permitted to do so at this stage in the proceeding, particularly given that determining what "qualifies as a trade secret presents a question of fact." *Combined Ins. Co. of Am. v. Wiest*, 578 F. Supp. 2d 822, 834 (W.D. Va. 2008) (Conrad, J.); *see also Star City Comics*, 2010 WL 5186713 at *5 ("Because the determination of whether the entities cited by the defendants are engaged in the same, specialized market as Star City requires the consideration of facts outside the complaint, the court agrees with Star City that the issue cannot be resolved at this stage of the proceedings, and that it is more appropriate for summary judgment."). Accordingly, Defendants' efforts to dismiss the complaint on this ground should be denied.

Even if the Court were to consider the articles, they do not undermine Bonumose's trade secret claims. The reasons are numerous, but include the fact that the articles do not say what Defendants claim they do—which may account for why Defendants fail to quote or cite any particular portions of the papers. For example, the "JBC Article" attached by Defendants does

not describe the conversion of F6P to T6P, as Defendants claim.  (Br. 4–5.)  It describes the opposite:  the conversion of T6P to F6P.  *See* JBC Article at 1 (describing the "epimerization of D-tagatose 6-phosphate C-4 to D-fructose 6-phosphate").

Finally, even if the Court were to consider the articles and even if they said what Defendants claim they say, the articles would not deprive the Tagatose Trade Secrets of trade secret protection.  As the Fourth Circuit has explained, "even if elements of the trade secret are public, if the particular alchemy behind the item as a whole is not, then it is considered protectable."  *Hill Holliday Connors Cosmopulos, Inc. v. Greenfield*, 433 F. App'x 207, 222 (4th Cir. 2011).  That would be the case here, though science, not alchemy, is involved.

c.   <u>The FAC Alleges that the Trade Secrets Were Sufficiently Guarded Against Disclosure</u>

Defendants do not challenge Bonumose's allegations that, up until CFB and Zhang's malfeasance, CFB and Bonumose kept the Tagatose Trade Secrets confidential and took steps to maintain the confidentiality of the trade secrets, including by limiting employee access to sensitive information, requiring non-disclosure agreements with employees and third-parties, and using passwords and other protections to prevent access by third-parties.  (*See, e.g.*, FAC ¶¶ 15, 17.)  Instead, Defendants argue that it is not clear from the FAC that Mr. Chun You, an employee of CFB, was required to keep the trade secrets confidential.  (Br. 12.)  This argument has no merit.

With respect to Mr. You, the FAC alleges:

> In March of 2016, Chun You, a current or former CFB employee, became an employee of the Tianjin Institute. Chun You was required to keep the Tagatose Trade Secrets confidential and to not take any action which would constitute a breach of the obligations CFB owed to Bonumose under the April 2016 Agreement.

(FAC ¶ 27.)  From this paragraph and the allegations regarding the steps CFB took to maintain the confidentiality of its trade secrets, one could draw the reasonable inference that Mr. You, as an employee of CFB, was required to maintain the secrecy of the Tagatose Trade Secrets and

that CFB helped maintain their confidentiality by limiting Mr. You's access to them and requiring appropriate non-disclosure agreements.  That is all that is required at the pleading stage.  *See Chisolm*, 95 F.3d at 334.

Defendants' bald assertion, seen nowhere in the FAC, that Mr. You did not sign a business protection agreement, (Br. 6), does not change this result, as it is a matter outside of the pleadings that has no place in a motion to dismiss.  *Machnik v. U.S. Dep't of Interior*, No. 1:16-cv-104, 2016 WL 8451469, at *2 (W.D.N.C. Nov. 26, 2016) ("As a threshold matter, the Motion to Dismiss filed by Defendants is improper as it relies on documents and evidence outside the pleadings, including declarations.").

### 2.     Bonumose Has Pled that the Trade Secrets Were Misappropriated

Defendants make only one argument as to why they believe that Bonumose has not pled adequately that the trade secrets were misappropriated:  the FAC does not explicitly state when Defendants communicated the trade secrets to the Tianjin Institute, so "the alleged communication could have occurred before Bonumose existed and before the Agreement was signed."  (Br. 13.)  Defendants improperly urge the Court to construe the FAC in the light least favorable to Bonumose.

As the Fourth Circuit has explained, a plaintiff need not plead "precise magical words in order to plausibly plead" a cause of action.  *Tobey*, 706 F.3d at 385.  Further, on a motion to dismiss, a court must "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiffs."  *Chisolm*, 95 F.3d at 334.  Here, one can easily draw the inference from the well-pled facts of the FAC that Defendants misappropriated Bonumose's trade secrets after the execution of the April 2016 Agreement.  For example, Bonumose alleges:

> In violation of the obligations under the April 2016 Agreement and duties under statute and common law, and during a time in which the Provisional Patent Application remained unpublished, Zhang and CFB wrongfully provided the Tagatose Trade Secrets to the Tianjin Institute.  (FAC ¶ 28.)

> Zhang and CFB have misappropriated the Tagatose Trade Secrets by disclosing and/or using the trade secrets without Bonumose's express or implied consent.

> Disclosure and/or use of the trade secrets are expressly prohibited under the April 2016 Agreement, to which Zhang and CFB are parties.  At the time of the disclosure and/or use of the trade secrets, Zhang and CFB knew or had reason to know that they owed a duty to Bonumose to maintain secrecy or limit the use of the trade secrets.  (FAC ¶ 78.)

It would be reasonable to infer based upon these allegations that Defendants provided the trade secrets to the Tianjin Institute after the April 2016 Agreement was executed but before the Provisional Patent Application was published in April 2017.  To the extent Defendants seek the precise date(s) of the misappropriation, that is information in the possession of Defendants that will be a subject of discovery, and Bonumose cannot be faulted for being unable to plead it with precision.  *See Penn Mut. Life Ins. Co. v. Berck*, No. DKC 09-0578, 2010 WL 1233980, at *5 (D. Md. Mar. 23, 2010) ("The facts underlying the STOLI transaction in this case are within the unique knowledge of Defendants, and requiring details such as the time and place of meetings and transactions would preclude nearly all potential plaintiffs from bringing a claim of this type.").  Accordingly, Defendants' argument should be rejected.

### 3.    Bonumose Has Pled that It Was Harmed

It is not entirely clear what Defendants are attempting to argue in the portion of their Memorandum titled "The FAC Does Not Adequately Plead Any Harm to Bonumose as a Result of the Alleged Wrongdoing."  (Br. 14–15.)  In one portion of the section, Defendants appear to be arguing that Bonumose failed to plead that it was harmed.  In another, Defendants contend that punitive damages and attorney fees are inappropriate.  And the section concludes by stating: "Because Bonumose cannot claim damages, it has not stated a claim for misappropriation on which relief can be granted."  (Br. 15.)  All of these arguments fail.

### a.    Bonumose Is Entitled to Damages and Injunctive Relief

As an initial matter, it bears noting that both the Virginia Uniform Trade Secrets Act ("VUTSA") and the Defend Trade Secrets Act permit remedies other than damages.  *See* VA Code Ann. § 59.1-338; 18 U.S.C. § 1836(b)(3); Joshua F.P. Long & Beth Burgin Waller, *Not So Secret Anymore:  The Defend Trade Secrets Act of 2016 Gives Strong New Protections for*

*Enforcing Trade Secret Misappropriation*, May 12, 2016, available at
www.woodsrogers.com/not-secret-anymore/ ("The Act allows for a series of remedies upon a
finding of a misappropriation of a trade secret including:  injunctive relief, damages for the
actual loss, and damages for any unjust enrichment that is not addressed in computing the actual
loss.").  For example, in addition to being compensated for actual damages, a plaintiff can
recover monetary damages for unjust enrichment and obtain injunctive relief.  Here, monetary
damages and injunctive relief are both appropriate.

Defendants contend that "Bonumose cannot be awarded injunctive relief on its
misappropriation claim, as even it acknowledges that whatever alleged 'trade secrets' might have
existed are now known to the public—thus there is nothing to enjoin."  (Br. 15.)  Defendants
presumably are referring to the fact that the Patent Cooperation Treaty patent application
containing trade secret information, which initially was filed in September 2016 (FAC ¶ 30), was
published in April 2017 (FAC ¶ 38).  Such an argument ignores the fact that Bonumose has
continued to develop additional trade secret information (*see* FAC ¶ 22) and that it is entitled to
enjoin the disclosure of any trade secret information that was not contained within the now-
public patent application.

Bonumose also is entitled to recover monetary damages for the harm it has suffered.
Although Defendants contend that the "FAC makes only one attempt to plead non-speculative
damages," the FAC contains many allegations supporting the harm and, consequently, damages
Bonumose suffered.  For example,  the FAC alleges:

- "Bonumose has invested considerable time and resources in commercializing the
  production methods and other findings relating to the Tagatose Invention."  (FAC
  ¶ 23.)

- "Given the need and demand for low-cost Tagatose, the Tagatose Trade Secrets
  are extremely valuable."  (FAC ¶ 24.)

- "Bonumose was damaged by the prior disclosure and use of the Tagatose Trade
  Secrets while that information was confidential.  The wrongful disclosure of the
  Tagatose Trade Secrets gave the Tianjin Institute several months of advanced

knowledge of confidential information, including, but not limited to, the enzymatic pathway discovered by Dr. Wichelecki."  (FAC ¶ 40.)

- "Legal remedies would be inadequate because without an injunction, Defendants and third parties could unlawfully compete in the market, producing Tagatose in contravention of Bonumose's patent and trade secret rights."  (FAC ¶ 43.)

- "Zhang and CFB have caused, and will continue to cause, damages to Bonumose's business, business relationships, goodwill, and reputation."  (FAC ¶ 44.)

- "Zhang's and CFB's misappropriation of the Tagatose Trade Secrets has caused, and will continue to cause, irreparable harm and damages to Bonumose's business, business relationships, goodwill, and reputation.  Bonumose may recover the damages arising out of Zhang's and CFB's misconduct.  Bonumose may also recover punitive damages.  Bonumose has been damaged in an amount to be proven at trial."  (FAC ¶ 80.)

- That the misappropriation of trade secrets allowed Zhang and the Tianjin Institute to unfairly compete against Bonumose by providing them with the information necessary to submit a patent application for Tagatose production.  (FAC ¶¶ 32–36.)

Bonumose also alleges that Defendants were unjustly enriched as a result of their misconduct, averring:  "The circumstances indicate Zhang and CFB received compensation or benefits from the Tianjin Institute in exchange for their wrongful disclosure of the Tagatose Trade Secrets."  (FAC ¶ 29.)  Such allegations are sufficient to establish that Bonumose was harmed, and is entitled to damages, at the motion to dismiss stage.  For example, in the *Star City Comics* case with respect to which this Court denied a motion to dismiss, the plaintiff alleged only that:  "As a direct and proximate cause of Woltereck and Troll and Toad's misappropriation, SCG has suffered substantial economic damages and lost profits."  Case No. 7:10-cv-00417-GEC-mfu, ECF No. 4 at ¶ 47; 2010 WL 5186713 at *6 ("Having reviewed the complaint, the court concludes that Star City has alleged sufficient facts to state a claim under the VUTSA.").  To the extent those allegations were sufficient, the allegations in Bonumose's FAC certainly are.

      b.      <u>The Punitive Damages and Attorney Fees Remedies Should Not Be Dismissed</u>

The Court also should refrain from dismissing Bonumose's requests for punitive damages and attorney fees.  Because the question whether Defendants engaged in "willful and malicious misappropriation" is a fact-dependent issue that is best developed during discovery, courts typically do not dismiss at the pleading stage requests for punitive damages and attorney fees under VUTSA.  For example, one judge in this District explicitly opined at the motion to dismiss stage that "it would be premature to rule out punitive relief, attorneys' fees, or injunctive relief at this stage."  *S & S Computs. & Design, Inc. v. Paycom Billing Servs., Inc.*, No. 500CV00058, 2001 WL 515260, at *2 (W.D. Va. Apr. 5, 2001).  Tellingly, both of the cases Defendants rely upon—*American Sales Corp. v. Adventure Travel, Inc.*, 867 F. Supp. 378 (E.D. Va. 1994) and *MicroStrategy, Inc. v. Business Objects, S.A.*, 331 F. Supp. 2d 396 (E.D. Va. 2004)—involve post-trial assessments of the propriety of punitive damages and attorney fees—not assessments at the pleading stage.

Further, even if the Court were to elect to address the issue at the pleading stage, Bonumose has pled facts sufficient to show that Defendants acted in a "willful and malicious" manner.  Under Defendants' interpretation of that standard, Bonumose can make a showing of "willful and malicious conduct" by pleading facts suggesting that Defendants acted in "conscious disregard of the rights of another."  (Br. 15.)  The FAC contains allegations that raise that inference:

- "In violation of the obligations under the April 2016 Agreement and duties under statute and common law, and during a time in which the Provisional Patent Application remained unpublished, Zhang and CFB wrongfully provided the Tagatose Trade Secrets to the Tianjin Institute." (FAC ¶ 28.)

- "Under Chinese law, it is improper to list someone as a co-inventor unless they have made creative contributions to the substantive features of the invention.  In turn, although he seeks to cover up his role by hiding his name from the face of the Chinese application, Zhang, by having himself listed as an anonymous co-inventor, is asserting a substantive role in the Tianjin Patent Application.  As an anonymous co-inventor identified in the Tianjin Application, Zhang has  breached contractual, statutory, and common law duties owed to Bonumose."  (FAC ¶ 34.)

14

- "The Tianjin Patent Application was prepared using Bonumose's Tagatose Trade Secrets.  The Tianjin Patent Application could not have been written without Tianjin Institute having the confidential, unpublished Provisional Patent Application or Tagatose Trade Secrets, the confidential or trade secret information underlying the Tagatose Invention."  (FAC ¶ 35.)

- "Zhang and CFB wrongly concealed their misappropriation, the wrongful disclosure to the Tianjin Institute, and the Tianjin Patent Application from Bonumose."  (FAC ¶ 37.)

- "Zhang and CFB have misappropriated the Tagatose Trade Secrets by disclosing and/or using the trade secrets without Bonumose's express or implied consent.  Disclosure and/or use of the trade secrets are expressly prohibited under the April 2016 Agreement, to which Zhang and CFB are parties.  At the time of the disclosure and/or use of the trade secrets, Zhang and CFB knew or had reason to know that they owed a duty to Bonumose to maintain secrecy or limit the use of the trade secrets."  (FAC ¶ 78.)

- "Upon information and belief, Zhang and CFB intended to cause Bonumose actual or constructive harm through their acquisition of the Tagatose Trade Secrets through improper means.  Zhang's and CFB's conduct constitutes willful and malicious conduct under the VUTSA."  (FAC ¶ 79.)

The Court therefore should refrain from dismissing Bonumose's requests for attorney fees and punitive damages.

### B.    Both of Bonumose's Breach of Contract Claims Are Pled Sufficiently

Defendants do not dispute the validity and enforceability of the April 2016 Agreement and CFB Business Protection Agreement.  Instead, they simply argue that (a) it is unclear from the Complaint whether the agreements were breached after they were signed; (b) the definition of "Tagatose Trade Secrets" in the FAC does not line up perfectly with the protected categories in the April 2016 Agreement; and (c) the allegations of breach are not sufficiently detailed.  None of these arguments is convincing.

First, Defendants attempt to fault the FAC by arguing, "Bonumose fails to show that any acts allegedly constituting a breach occurred after the Agreement was signed."  (Br. 16.)  That is, Defendants seek dismissal of the breach of contract claims because the FAC does not *explicitly* plead that the breaches occurred after the relevant agreements were signed.  This argument does

not stand up to scrutiny and should be disregarded.  As noted above, on a motion to dismiss, a court must "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiffs."  *Chisolm*, 95 F.3d at 334.  It is entirely reasonable to infer, based on the allegations in the FAC that the parties entered into contracts (*see, e.g.*, FAC ¶¶ 46–50) and Defendants breached the contracts (*see, e.g.*, FAC ¶¶ 53–55), that the breaches occurred after the contracts were entered into.  It would be unreasonable to infer otherwise.

Second, Defendants seek dismissal of the breach of contract claims under the theory that "Defendants' non-compete, non-disclosure, and no communication obligations under the [April 2016] Agreement apply to a much narrower set of information" than the Tagatose Trade Secrets. (Br. 16.)  Even if the Court were not obligated to construe the facts in the light most favorable to Bonumose, it would be difficult to make a straight-faced argument that the "IP RIGHTS" and "ASSIGNED ASSETS" provisions identified by Defendants truly are "much narrower" than the Tagatose Trade Secrets and do not include any such Tagatose Trade Secrets.  The "IP RIGHTS" contemplated in the April 2016 Agreement are:

> Patents, ***patent applications***, trademarks, copyrights, ***trade secrets***, ***know how***, data, lab notes and/or PowerPoint presentations, any rights or interest in or to any of the foregoing, including without limitation any royalty or other financial rights, or rights of first refusal.

Budaj Decl., Ex. A at 2, ECF No. 24-2 (emphasis added).  The "ASSIGNED ASSETS" include:

> (1) All IP RIGHTS related to the production of Tagatose from starch, sucrose, cellulose, or degradation products thereof, ***including all intermediate steps, and including without limitation the U.S. Provisional Patent Application entitled "Enzymatic Synthesis of DTagatose,"*** as well as any subsequent non-provisional patent application, international filings, continuations, divisionals, etc. (Hereafter, BONUMOSE shall be responsible for all Tagatose patent prosecution expenses.)

> (2) All IP RIGHTS held by CFB, if any, related to the production of fructose 1,6-bisphosphate (FBP) from starch, sucrose, cellulose, or degradation products thereof, as well as other Sugar Phosphates derived from FBP, including all intermediate steps.

16

(3) All IP RIGHTS to ENZYME GROUP 1 and in particular any unique characteristics thereof created or discovered by CFB, including the identification of any wildtype enzymes whether or not already in the literature.

(4) The expression strains, genomic DNAs, primers, plasmids, substrates, enzymes, buffers, and associated material related to the Tagatose and Sugar Phosphates technologies.

*Id.* at 2–3 (emphasis added).  Given the references in these provisions to "trade secrets," the "Provisional Patent Application" containing the Tagatose Trade Secrets, and "know how" "related to the production of Tagatose from starch, sucrose, cellulose, or degradation products thereof," it is difficult to see how the Tagatose Trade Secrets—defined as "confidential information and trade secrets relating to proprietary processes for the enzymatic production of Tagatose" (FAC ¶ 2)—would not fall neatly within the definitions of "IP RIGHTS" and "ASSIGNED ASSETS."  Accordingly, Defendants' argument to the contrary fails.[2]

Finally, Defendants argue that Bonumose's allegations that Defendants "are in breach of the express terms of the" April 2016 Agreement and "are in breach of the implied covenant of good faith and fair dealing" are overly conclusory.  (Br. 17.)  This argument should be disregarded, as it ignores the numerous allegations within the FAC that support those statements. (*See, e.g.,* FAC ¶¶ 34, 53–56.)  Defendants also note in passing that "[r]egarding the alleged breach of the non-compete obligation specifically, FAC ¶ 53, Bonumose does not plead that any competition existed, exists, or will exists."  (Br. 17.)  Defendants apparently missed the allegations in the FAC that Defendants sought to compete against Bonumose, and aid the Tianjin Institute in competing against Bonumose, by disclosing confidential and trade secret information to the Tianjin Institute.  (*See, e.g.,* FAC ¶¶ 30–36, 42–43.)  For example, the FAC explicitly alleges:

---

[2] Defendants also fail to appreciate that the breach of contract claim is based on more than the unauthorized disclosure of Tagatose Trade Secrets.  For example, it also is based upon the disclosure of other confidential information related to the production of Tagatose.  (FAC ¶ 54.) Such information also falls within the definitions of "IP RIGHTS" and "ASSIGNED ASSETS".

> Zhang and CFB breached the April 2016 Agreement by disclosing the Tagatose Trade Secrets to the Tianjin Institute to assist the Tianjin Institute's efforts **to compete with** Bonumose regarding the commercialization of Tagatose.

(FAC ¶ 53 (emphasis added).)

### C.   Bonumose Sufficiently Alleges Tort Claims for Conspiracy and Conversion

#### 1.   Defendants' Preemption Argument Fails Because Defendants Contend that the Materials at Issue Are Not Trade Secrets

Although Defendants spend several pages of their motion arguing that Bonumose has failed to identify any actual trade secrets and that its misappropriation claims fail, Defendants take the inconsistent position later in their brief that Bonumose's tort claims necessarily are preempted by the VUTSA and must be dismissed.  (Br. 17–18.)  This argument should be disregarded, as "[t]he VUTSA does not preempt alternative tort recovery unless it is clear that the [purported trade secret] falls within the scope of the Act."  *Int'l Paper Co. v. Gilliam*, 63 Va. Cir. 485, 490 (Va. Cir. Ct. 2003) (denying motion to dismiss conversion claim as preempted). Here, by arguing that the Tagatose Trade Secrets are not truly trade secrets, Defendants have foreclosed any argument that Bonumose's tort claims are preempted.

Further, motions to dismiss based on VUTSA preemption typically are denied, as "it is not an appropriate vehicle for dismissal pursuant to Fed.R.Civ.P. 12(b)(6)."  *Alliance Tech. Group, LLC*, No. 3:12-cv-701-HEH, 2013 WL 143500, at *6 (E.D. Va. Jan. 11, 2013); *see, e.g., Wiest*, 578 F. Supp. 2d at 834 ("because the determination of whether such information qualifies as a trade secret presents a question of fact, and because the defendant specifically disputes whether the information at issue is 'proprietary to Combined', the court declines to conclude, at this stage of the litigation, that Combined's conversion claim is preempted by the Trade Secrets Act." (citations omitted)) (Conrad, J.).  Notably, in the only case Plaintiff cites in support of their preemption argument, *MicroStrategy Inc. v. Bus. Objects, S.A.*, 429 F.3d 1344 (Fed. Cir. 2005), the issue of preemption was addressed at the summary judgment stage, not on a motion to dismiss.  Defendants' preemption argument should therefore be disregarded.

18

2.    Bonumose States a Valid Conspiracy Claim

Defendants contend that Bonumose's conspiracy claim should be dismissed because the FAC "does not even purport to show any 'concerted action' took place" or "that Defendants acted 'willfully and maliciously'."  (Br. 18–19.)  Both of these arguments fail.

As an initial matter, Defendant provides the Court with the wrong definition of "willfully and maliciously."  Citing an opinion regarding the propriety of awarding attorney fees, not the appropriate standard to apply when assessing whether one has successfully pled a conspiracy claim, Defendants state that Bonumose must plead "ill will, malevolence, grudge, spite, wicked intention or a conscious disregard of the rights of another."  (Br. 19.)  This is incorrect.  On a conspiracy claim, "[a] plaintiff is not required to prove actual malice but only legal malice—i.e., that the defendant acted intentionally, purposefully, and without lawful justification." *Broadhead v. Watterson*, 5:15-cv-00020, 2016 WL 742127, at *8 (W.D. Va. Feb. 24, 2016) (citation omitted).

The allegations of the FAC show that (a) Zhang and CFB engaged in concerted activity and (b) they acted intentionally, purposefully, and without lawful justification.  Bonumose alleges "Zhang and CFB combined, associated, agreed, or mutually undertook together to willfully and maliciously injure Bonumose in its reputation, trade, business, or profession" (FAC ¶ 95) and supports those allegations with additional facts throughout the FAC.  For example, Bonumose alleges:

- "***Zhang and CFB*** intentionally, purposefully, and without justification obtained Bonumose's proprietary information in the production of Tagatose and used that information to file the Tianjin Patent Application."  (FAC ¶ 97 (emphasis added).)

- "In violation of the obligations under the April 2016 Agreement and duties under statute and common law, and during a time in which the Provisional Patent Application remained unpublished, ***Zhang and CFB*** wrongfully provided the Tagatose Trade Secrets to the Tianjin Institute."  (FAC ¶ 28 (emphasis added).)

19

- "The circumstances indicate **Zhang and CFB** received compensation or benefits from the Tianjin Institute in exchange for their wrongful disclosure of the Tagatose Trade Secrets."  (FAC ¶ 29 (emphasis added).)

- "**Zhang and CFB** wrongly concealed their misappropriation, the wrongful disclosure to the Tianjin Institute, and the Tianjin Patent Application from Bonumose."  (FAC ¶ 37 (emphasis added).)

- "**CFB and Zhang** have misappropriated Tagatose Trade Secrets by: . . . **Conspiring with each other** and third parties to engage in the conduct described in subsections (a) and (b).  At the time of such conspiracy, CFB and Zhang intended or knew that its conduct would benefit the Chinese government, an instrumentality of the Chinese government, and/or an agent of the Chinese government."  (FAC ¶ 89 (emphasis added).)

Such allegations, and the inferences that can be drawn from them, are more than enough to survive Defendants' motion to dismiss.  *See Broadhead*, 2016 WL 742127, at *8 (looking to all of the allegations in the complaint and denying a motion to dismiss a conspiracy claim); *Pre-Fab-Steel Erectors, Inc. v. Stephens*, No. 6:08-cv-00039, 2009 WL 891828, at *15–16 (W.D. Va. Apr. 1, 2009) (same).  Unlike the cases cited by Defendants, this is not a case in which the plaintiff made a single, conclusory allegation or similarly fell short of the pleading standard.  (*See* Br. 18.)  This is a case in which Bonumose detailed a concerted and intentional scheme directed against Bonumose without legal justification.

Defendants also contend that Bonumose fails to allege how it was harmed by the alleged conspiracy, but that argument similarly fails.  As explained in detail in Section IV.A.3.a above, Bonumose has pled a variety of ways in which it was harmed by Defendants' misconduct.  (*See also* FAC ¶ 98.)

### 3.    Bonumose Properly Pleads a Conversion Claim

In addition to the preemption argument discussed above, Defendants make three arguments for why the conversion claim should be dismissed.  All three arguments should be rejected.

First, relying on a New York case applying New York law, Defendants argue that the conversion claim should be dismissed to the extent it relates to the alleged breaches of contract. (Br. 19 n.10.)  But this Court has rejected that very argument under Virginia law, explaining:

> As the United States District Court for the Eastern District of Virginia explained in *Hewlette v. Hovis*, 318 F.Supp.2d 332, 337 (E.D.Va.2004), "the duty not to convert the property of another for one's own purposes" exists in the absence of any contract, and thus provides the basis for an "independent tort from the contract claims" arising out of the parties' relationship.

*Wiest*, 578 F. Supp. 2d at 833.

Second, Defendants attempt to argue that the information required for the production of Tagatose is intangible and therefore cannot be the subject of a conversion claim.  (Br. 19–20.) Again, this Court has addressed this precise issue.  In *Wiest*, the defendant argued that the conversion claim was "without merit because the property allegedly converted—a confidential list sent to the defendant's email account—is intangible."  578 F. Supp. 2d at 835.  This Court rejected that argument, explaining:  "While a cause of action for conversion generally applies only to tangible property, courts have recognized the tort of conversion in cases where intangible property rights arise from or are merged with a document."  *Id.* (internal citation omitted); *see also Gilliam*, 63 Va. Cir. 485 (denying motion to dismiss claim arising from the conversion of customer pricing lists).

The same result is appropriate here.  Bonumose alleges that the information wrongly converted by Defendants—the information required for the production of Tagatose—was merged into documents, specifically the Provisional Patent Application and Patent Cooperation Treaty patent application.  (FAC ¶¶ 13–14 & 30–31.)  One also can infer from the allegations of the Complaint that such information is sufficiently complicated that it can only be adequately transferred by being reduced to a writing, in either electronic or physical form.  This is sufficient at the pleading stage.  To the extent Defendants would like Bonumose to plead the precise format of the information when Defendants converted it (*e.g.*, whether the information was reduced to a tangible physical document or captured in electronic files), those details are uniquely within the

21

knowledge and control of Defendants and will be a subject of discovery.  *See Penn Mut. Life Ins. Co.*, 2010 WL 1233980, at *5.

The cases cited by Defendants do not compel a result different from the Court's previous holdings.  (*See* Br. 20.)  *Hinkle Oil & Gas, Inc. v. Bowles Rice McDavid Graff & Love, LLP*, 617 F. Supp. 2d 447 (W.D. Va. 2008) involved the application of West Virginia law that substantively differs from the Virginia principles of law applicable here.  *Compare Hinkle*, 617 F. Supp. 2d at 455 (identifying "business goodwill or customer lists" as "exclude[d] from a cause of action for conversion of intangible property rights"), *with Wiest*, 578 F. Supp. 2d at 835 (confidential list was the proper subject of a conversion claim) *and Gilliam*, 63 Va. Cir. at 485 (denying motion to dismiss claim arising from the conversion of customer pricing lists).  The other case Defendants cite, *James River Mgmt. Co. v. Kehoe*, 2009 U.S. Dist. LEXIS 107847, at *24–25 (E.D. Va. Nov. 17, 2009), was not a matter in which the Court held that the plaintiffs had identified intangible rights that were not the proper subject of a conversion claim.  Rather, it was a lawsuit involving at least nine defendants, in which the Court understandably held that the plaintiffs needed to "identify who took what" instead of simply alleging "that all Defendants are responsible for all converted items."  *Id.* at *24–25.  The same potential for confusion is not present here:  there are only two defendants and the FAC alleges that they acted in concert.

Finally, Defendants contend that Bonumose fails to allege how it was harmed by the alleged conversion.  As explained in Section IV.A.3.a above, Bonumose has alleged a variety of ways in which Bonumose was harmed by Defendants' misconduct.  (*See also* FAC ¶ 104.)  That is sufficient to survive a motion to dismiss.  *See Marsteller v. ECS Fed., Inc.*, No. 1:13-cv-593 (JCC/JFA), 2013 WL 4781786, at *9 (E.D. Va. Sept. 6, 2013) ("[A]llegations concerning specific amounts of monetary loss are not required for purposes of a motion to dismiss. ECS has alleged that it suffered damages in the form of the loss of the property and is entitled to royalties; that is sufficient at this stage.").

### D.  Bonumose States a Valid Claim for Declaratory Judgment

The Declaratory Judgment Act allows a court "[i]n a case of actual controversy within its jurisdiction" to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).

In an effort to prevent Bonumose from proceeding under this Act, Defendants cite a case illustrating that there is some disagreement as to whether a request for declaratory judgment is better framed as a standalone claim or a request for relief.  (Br. 20.).  They then conclude that Bonumose's declaratory judgment claim is a "clearly improper cause of action" and "speaks to the true nature of this lawsuit."  (Br. 21.)  But, in making this argument, Defendants conspicuously fail to acknowledge that courts of this District routinely permit standalone declaratory judgment claims to survive motions to dismiss.  *See, e.g.*, *Harleysville Ins. Co. v. Holding Funeral Home, Inc.*, No. 1:15CV00057, 2016 WL 4703755, at *4 (W.D. Va. Sept. 8, 2016) (denying motion to dismiss declaratory judgment claim); *Carter v. Am. Note Serv.*, No. 5:14-cv-00003, 2014 WL 2002829, at *2–3 (W.D. Va. May 15, 2014) (same); *Adkins v. EQT Prod. Co.*, No. 1:11-cv-00031, 2011 WL 6178438, at *4 (W.D. Va. Dec. 13, 2011) (same).

In order to survive dismissal, a plaintiff need only allege "a substantial controversy between parties having adverse legal interests of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  *Carter*,  2014 WL 2002829 at *2.  Bonumose has done so here, as it has shown that there is a substantial controversy between Bonumose, Zhang, and CFB about Bonumose's current and continuing obligations to Zhang and CFB, if any, under the April 2016 Agreement.  Bonumose alleged that "Bonumose has met all of the milestones and satisfied all of its obligations under the April 2016 Agreement, including the payment of distributions" (FAC ¶ 68), whereas "Zhang and CFB breached the April 2016 Agreement" (FAC ¶ 69), and that Bonumose "owed continuing obligations to CFB and Zhang only so long as CFB and Zhang were not in breach," (FAC ¶ 70).  Consequently, Bonumose is:

> entitled to a declaration of this Court clarifying the rights of the parties under the April 2016 Agreement and specifically declaring (1) that Zhang and CFB are in breach of contract and accordingly CFB does not have reversionary rights under

23

> the April 2016 Agreement, and (2) Zhang and CFB are in breach of contract and accordingly Bonumose does not owe any further duties to CFB, including duties for further payment.

(FAC ¶ 71.)

Defendants contend that Bonumose is not entitled to such a declaration because it "has an 'adequate alternative remedy in another form of action'—an action at law for breach of contract." (Br. 20.)  Setting aside the fact that Defendants are seeking dismissal of the breach of contract claim on the one hand and arguing that the claim constitutes an "adequate alternative remedy" to the declaratory judgment claim on the other, resolution of the breach of contract claim will not fully resolve the ongoing dispute between the parties regarding their respective rights and obligations under the contract.  Although the Court will hold that Defendants breached the April 2016 Agreement in resolving the breach of contract claim, the Court will not necessarily reach other issues as to which Bonumose has sought a declaration.  For example, the breach of contract claim likely will not resolve whether CFB has, or will have, reversionary rights under the April 2016 Agreement or whether Bonumose owes current or continuing duties to Defendants.  "This is precisely the type of contractual uncertainty that declaratory judgments are designed to address, because a determination of these issues will serve a useful purpose in clarifying the legal relations in issue and will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Harleysville Ins. Co.*, 2016 WL 4703755 at *4 (internal citation omitted).

Although Defendants contend that, if Bonumose succeeds on the breach of contract claim, "the express terms of the Agreement would prohibit CFB from executing on its reversionary rights in the tagatose-related," (Br. 21), Bonumose would prefer a declaration from the Court to that effect, rather than rely on Defendants—who already have breached the contract and misappropriated trade secrets—to apply the plain language of the contract.  Further, it is clear from Defendants' own motion that there remains a "a substantial controversy between parties having adverse legal interests" in relation to the April 2016 Agreement, as Defendants contend "Bonumose has completely failed to meet its Milestones pursuant to the Agreement."

(Br. 21.)  A declaration from the Court would resolve such controversies.  Accordingly, Defendants' motion to dismiss Bonumose's declaratory judgment claim should be denied.

### E.   Defendants Attempt to Distract the Court with Assertions Outside the Pleadings, Mischaracterizations of Attached Documents, and Conspiracy Theories Targeting Bonumose's CEO; These Tactics Are Improper and Should Be Rejected.

Bonumose fairly believes that Defendants' repeated assertions outside the record are not mistakenly offered to support Defendants' Motion to Dismiss but, rather, are made for an improper purpose—to harm Bonumose financially in an effort to deter the litigation.

Soon after this lawsuit was filed, counsel for Bonumose made contact with counsel for Defendants Zhang and CFB.  In those discussions, lead counsel for Defendants, Mr. Hopenfeld, repeatedly expressed that, if Bonumose pursued its claims, Defendant Zhang would use the litigation to invalidate the core intellectual property held by Bonumose, destroying the company.

Any experienced counsel knows that a motion to dismiss is based on the pleadings with limited exceptions.  *See Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 557 (4th Cir. 2013) ("Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, on a motion to dismiss.")  Further, there is no authority for the proposition that a motion to dismiss will be granted based on assertions by the moving parties' counsel regarding the "true motives" behind a lawsuit or that attached scientific articles "win the case."

Nevertheless, the first six pages of Defendants' Brief consist of repeated assertions outside the record.  Defendants do vary the manner in which they interject references outside the pleadings.  Sometimes Defendants makes assertions with no citation whatsoever.  Sometimes the Defendants cite to the First Amended Complaint with a "*see*" reference even though the cited portion of the First Amended Complaint does not track the representation.  Sometimes the Defendants cite to the original complaint which is now a nullity.   Sometimes Defendants made an assertion contrary to an allegation in the First Amended Complaint and use a "*cf*."

reference.  Regardless of how Defendants interject the assertions, each appears to be made for an improper purpose.

That the motive is improper is further evidenced by the fact Defendants do not even raise many of their boldest assertions in the body of their argument.  Accordingly, it is fair to conclude Defendants' repeated assertions outside the record are an effort to further counsel's threat to damage Bonumose by calling into question the company's intellectual property.  As Defendants must know, these filings are public and, as Bonumose works to commercialize the intellectual property, the filings will be reviewed by Bonumose's potential business partners.

While trusting the Court will focus on the pleadings when addressing the motion, Bonumose feels it is appropriate to raise that Zhang was recently arrested by federal authorities based on alleged criminal activity occurring at or around the time of the creation of Bonumose and Ed Roger's leaving his position as CEO of CFB.  Bonumose does not believe any of this is relevant to whether or not the pleadings are sufficient.  Bonumose also understands an arrest is not a conviction.  But if Defendants truly believe, as they assert, that the true motivation for Bonumose's lawsuit relates to Mr. Roger's departure from CFB and should be considered by the Court, the circumstances outlined in the Affidavit in Support of Criminal Complaint, which directly relate to the departure, should be included in the record on their motion.  *See* Affidavit of Carolyn Montgomery at Exs. A and B; Declaration of Edwin O. Rogers at ¶¶ 5-6.

## V.      CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss should be denied in its entirety. To the extent the Court decides to dismiss any of Bonumose's claims, Bonumose requests that such dismissal be without prejudice and with leave to amend so that it may address any deficiencies identified by the Court.  *See Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 379 (4th Cir. 2012) ("[A] request to amend should only be denied if one of three facts is present: the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile.").

Dated this 25th day of September, 2017.

/s/ Erik F. Stidham
Erik F. Stidham, Admitted *Pro Hac Vice*
HOLLAND & HART LLP
800 W. Main Street, Suite 1750
P.O. Box 2527
Boise, ID 83701-2527
Phone: (208) 342-500
Facsimile: (208) 343-8869
E-mail: efstidham@hollandhart.com

Hope Hamilton, VSB #65521
HOLLAND & HART LLP
One Boulder Plaza
1800 Broadway, Suite 300
Boulder, CO 80302
Phone: (303) 473-4822
Facsimile: (303) 416-8842
E-mail: hihamilton@holladhart.com

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this 25th day of September, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Joshua F.P.Long                                    jlong@woodsrogers.com
Woods Rogers PLC
P.O. Box 14125
Roanoke, VA  24038-4125
Telephone: (540) 983-7725/ Fax: (540) 983-7711

                                                     nevans@woodsrogers.com

Nathan A. Evans
Woods Rogers PLC
123 East Main Street, Suite 500
Charlottesville, VA  22902
Telephone: (434) 220-6829 / Fax: (434) 220-5687

                                              jhopengeld@singerbea.com
James Hopenfeld (Admitted *Pro Hac Vice*)        ebudaj@singerbea.com
Evan Budaj (Admitted *Pro Hac Vice*)
Singer/Bea LLP
601 Montgomery Street, Suite 1950
San Francisco, CA  94111
Telephone: (415) 500-6080


                          */s/ Erik F. Stidham*
                          Erik F. Stidham, Admitted *Pro Hac Vice*
                          HOLLAND & HART LLP
                          800 W. Main Street, Suite 1750
                          P.O. Box 2527
                          Boise, ID 83701-2527
                          Phone: (208) 342-500
                          Facsimile: (208) 343-8869
                          E-mail: efstidham@hollandhart.com

                          Attorney for Plaintiff

10218853_4.docx