CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
08/06/2018
JULIA C. DUDLEY, CLERK
BY: /s/ J. JONES
DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| BONUMOSE BIOCHEM LLC,<br><br>               *Plaintiff*,<br>v.<br><br>YI-HENG PERCIVAL ZHANG, *ET AL.*,<br><br>               *Defendants*. | CASE NO. 3:17-cv-00033<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

    This is a trade secrets case, operating against the backdrop of Yi-Heng Zhang's pending federal criminal trial for research-grant fraud. *USA v. Zhang*, No. 7:17-cr-73-MFU (W.D. Va.). Zhang and his civil co-defendant, Cell-Free Bioinnovations, Inc. (Cell-Free), here face claims by plaintiff Bonumose Biochem LLC (Bonumose) for misappropriating trade secrets about sugar enzymes, and for breach of contract. Bonumose's claims are not at issue for the moment. Zhang and Cell-Free's response to them is.

    First, Zhang and Cell-Free answered and pled three affirmative defenses. They accuse Edwin O. Rogers of fabricating to federal authorities the criminal fraud allegations against Zhang, supposedly as part of a plot to force Zhang and Cell-Free to enter into the contracts Bonumose now says they breached. Second, Zhang and Cell-Free filed what the Court will call a counterpleading. It contains one counterclaim against Bonumose (and only Bonumose) for breach of contract. The counterpleading also includes claims against only Rogers and another company. Bonumose, Rogers, and the company replied to these actions with several motions.

    The Court holds that one of the three affirmative defenses should be stricken, the counterclaim against Bonumose should not be arbitrated but should be dismissed, and the attempt to rope Rogers and the other company into this case is procedurally improper.

## I. Background, According to Bonumose[1]

Sugar tastes good. But it's unhealthy. So, companies and scientists explore how to efficiently change its structure. The idea is to make a sugar variant that tastes great but is less unhealthy. Zhang and Cell-Free were engaged in this endeavor. Specifically, they tried to develop a new enzymatic process that would change sugar into a healthier alternative called tagatose.

Zhang is a former university professor who also holds an appointment at the Tianjin Institute in China. He is the co-founder and majority shareholder of Cell-Free. In 2015, a researcher at Cell-Free invented an enzymatic method to creating a better sugar. Cell-Free filed a provisional, unpublished patent application in October 2015, listing the researcher and Zhang as co-inventors. The information therein included the "Tagatose Trade Secrets" at issue in Bonumose's complaint.

On April 1, 2016, Zhang, Cell-Free, and Bonumose entered in the "Agreement for Asset Sale and Assignment" (AASA). Cell-Free and Zhang agreed not to compete against Bonumose, not to disclose confidential information, and to cease communications with third parties about the assigned rights. In exchange, Bonumose received the rights to the tagatose trade secrets and other assets. It also issued common membership units to Cell-Free and agreed to make annual payments on April 1 over a four-year period. And Bonumose committed to meet certain business development "milestones," with the trade secrets and other rights reverting back to Cell-Free if Bonumose failed. According to its complaint, Bonumose has met all of its obligations under the AASA, including the annual payments.

In September 2016, a few months after consummation of the AASA, Bonumose filed an

---

[1] The following background is substantially drawn from Magistrate Judge Hoppe's report and recommendation, which summarizes Bonumose's complaint.

international patent application regarding tagatose, listing China as a covered country. The application remained confidential until April 2017. But Bonumose learned soon thereafter that the Tianjin Institute had filed its own patent application in November 2016. Tianjin's application listed several inventors, two of whom asked to have an "unlisted name," which is an unusual practice. Bonumose believes that the unnamed inventors are Zhang and a former Cell-Free employee. It further believes that there was no way the Tianjin application—which substantially mirrored Bonumose's confidential application—could have been developed without knowledge and use of the tagatose trade secrets.

The theory of Bonumose's case is therefore that Zhang, after the AASA in April 2016, shared the tagatose trade secrets with the Tianjin Institute prior to the Tianjin application's publication in November 2016. Indeed, Bonumose alleges that the Tianjin Institute paid Zhang and Cell-Free in exchange for the trade secrets. Bonumose is litigating five claims against Zhang and Cell-Free: two breach of contract claims; two trade secret claims (one federal and one state); and a declaratory judgment claim to ascertain the parties' rights under the AASA.[2]

## II. Zhang and Cell-Free's Response

After filing a partially successful motion to dismiss, *see supra* footnote 2, Zhang and Cell-Free launched what they styled as an "answer . . . and statement of affirmative defenses; counterclaims." (Dkt. 50). The answer portion of that filing is not now at issue.

1.

Zhang and Cell-Free put forth three affirmative defenses, all attacking the validity or enforceability of the AASA. First, they assert "duress or undue influence" by Rogers, who allegedly "knowingly and falsely report[ed] to governmental authorities allegations of grant

---

[2] Bonumose's complaint also contained claims for civil conspiracy and conversion, but those have been dismissed.

fraud and other misconduct by [Zhang and Cell-Free], thereby causing the suspension of grant funds to" Cell-Free, which Rogers allegedly knew was Cell-Free's primary source of funding. (Dkt. 50 ¶ 112). Rogers also supposedly knew the subsequent investigation would cause financial, personal, and professional hardship for Zhang and Cell-Free, thus allowing Rogers to "use[] the crises he had created" to "force" Zhang and Cell-Free to execute the AASA. (*Id*. ¶116).

Second, they alleged "fraud and extortion" by Rogers and his company, Terebinth Strategic Management, LLC (Terebinth). Rogers and Terebinth, "acting on behalf of and in furtherance of the interests of the entity that would become Bonumose," devised a "scheme" to take Cell-Free's valuable, tagatose-related intellectual property and commercialize it. (Dkt. 50 ¶¶ 120–21). While the allegations are amplified, the gist is the same: That Rogers made false accusations of grant fraud against Zhang and Cell-Free, to both government officials and corporate leaders of Cell-Free, with the "ultimate goal" of "hobbl[ing] them "to the point where they would have no realistic choice but to accede to Rogers and Terebinth's demands that they transfer [Cell-Free's] intellectual property" to Bonumose. (*Id*. ¶¶ 122–24). In a further effort to consummate the AASA, Rogers also purportedly falsely implied to Zhang and Cell-Free that, if they transferred the tagatose technology to Bonumose, Rogers would help clear the false allegations them. (*Id*. ¶¶ 127–29).

Third, Zhang and Bonumose put forth the defense of "unclean hands," alleging that Bonumose, "acting through Rogers and/or Terebinth," committed the false, fraudulent, and extortionist acts surveyed above. (Dkt. 50 ¶¶ 138–40).

2.

The "counterclaims" in part rely on similar allegations of wrongdoing by Rogers and

Terebinth. Rogers had come to be Cell-Free's CEO through a Consulting Agreement in March 2015 between Terebinth (acting through Rogers, its managing member) and Cell-Free. (*Id*. ¶ 15). In return for Rogers' service, Terebinth received equity in Cell-Free. (*Id*.) But Rogers was fired as CEO in December 2015, thus terminating the Consulting Agreement. (Counterpleading ¶¶ 25, 27–28, 83).

Because Terebinth (which Rogers controlled) still had a stake in Cell-Free, Rogers continued to sit on Cell-Free's board. (*Id*. ¶ 28). Notwithstanding that Rogers, by virtue of that position, "continued to owe fiduciary duties to" Cell-Free, he supposedly "began to execute a scheme to take" Cell-Free's intellectual property regarding tagatose and commercialize it "outside" of Cell-Free, including through Bonumose. (*Id*. ¶¶ 29, 39). Allegedly, Rogers sent several letters in late 2015 and early 2016 to government officials and corporate leaders of Cell-Free, blaming Zhang and others for Cell-Free's shortcomings. These communications (1) asserted that others had failed to protect Cell-Free's confidential information, (2) accused Zhang of criminal grant fraud, (3) asked that Cell-Free's intellectual property be transferred to the new company created by Rogers, which turned out to be Bonumose, and (4) demanded Zhang be removed as Director, President, and Chief Science Officer of Cell-Free. (*Id*. ¶¶ 30–43, 48–54).

"In reliance on Rogers' allegations," federal authorities opened a grant fraud investigation into Cell-Free and suspended one of its grants on February 9, 2016. (Counterpleading ¶ 44). Throughout March, Rogers "repeatedly asked [Cell-Free] to formally tender its tagatose portfolio to Bonumose," purportedly promising that if Zhang and Cell-Free agreed, then he and Terebinth would, among other things, work with them "to dispel the false allegations that Rogers had wrongfully presented" to the government and others. (*Id*. ¶ 56). "Faced with the possibility of professional and personal ruin due to Rogers' misconduct," Zhang

– 5 –

and Cell-Free "began to submit to Rogers' demands," such as by executing the AASA. (*Id*. ¶¶ 57–58). Rogers agreed to cooperate with "any and all reasonable requests related to a resolution of the" grant investigation. (Dkt. 90-2 at 4). Rogers, according to Cell-Free and Zhang, did not follow through on that commitment.

The AASA also imposed several performance "milestones" on Bonumose regarding the commercialization of tagatose. By April 1, 2017, Bonumose had to reach an agreement with a company to support technology development and commercialization of tagatose. By April 1, 2018, Bonumose was required to start a pilot plant capable of producing several tons of tagatose. "Upon information and belief," Rogers suspected Bonumose would not meet the milestones, and thus "began to create schemes to avoid the consequences of Bonumose's imminent breaches," among them accusing Zhang and Cell-Free of breaching the AASA first. (Countercomplaint ¶¶ 63–68). Zhang and Cell-Free further allege, upon "information and belief," that Bonumose failed to meet the milestones.

Based on the above, Zhang and Cell-Free assert one counterclaim against Bonumose for breaching the AASA by failing to meet the 2017 and 2018 milestones. (*Id*. ¶¶ 110–18). They purported to assert five other "counterclaims" against either Rogers, Terebinth, or both.

One alleges that Terebinth breached the Consulting Agreement by (a) failing to properly supervise grant applications, (b) competing against Cell-Free, and (c) failing to obtain investor funding for Cell-Free. (*Id*. ¶¶ 76–92).

Another accuses Rogers' of breaching, in various ways, his fiduciary duties to Cell-Free as its CEO and while he still sat on its board. (*Id*. ¶¶ 93–100).

The third claim says Rogers defamed Cell-Free and Zhang through false accusations of criminal grant fraud and other business misconduct. (*Id*. ¶¶ 101–09).

The fourth claim contends Rogers breached the AASA by failing to cooperate in the effort to clear Zhang and Cell-Free from the (allegedly false) grant fraud allegations. (*Id*. ¶¶119–25).

And sixth claim argues Rogers and Terebinth tortiously interfered with Cell-Free's business relationships with federal grant authorities by falsely accusing Cell-Free of grant fraud. (*Id*. ¶¶ 126–34).

3.

In response to the counterpleading, Bonumose moved to strike the "counterclaims" against Rogers and Terebinth as improperly joined. (Dkt. 55). Rogers and Terebinth moved to dismiss the "counterclaims" against them on the merits. (Dkt. 56). Bonumose further moved to strike the three affirmative defenses, compel arbitration on the single counterclaim against it, and alternatively to dismiss the counterclaim on the merits. (Dkt. 58).

### III. The Affirmative Defenses

The Court begins its analysis with Bonumose's motion to strike Zhang and Cell-Free's affirmative defenses against the validity of the AASA. Again, the affirmative defenses respectively assert duress/undue influence, fraud/extortion, and unclean hands. A "court may strike from a pleading an insufficient defense . . . ." Fed. R. Civ. P. 12(f). A "defense that might confuse the issues in the case and would not, under the facts alleged, constitute a valid defense to the action can and should be deleted." *Waste Mgmt. Holdings, Inc. v. Gilmore*, 252 F.3d 316, 347 (4th Cir. 2001). Nonetheless, motions to strike affirmative defenses are disfavored. *Id*.

1.

Turning to the unclean hands defense first, it will be stricken. Bonumose argued that,

under Virginia law,[3] the unclean hands defense applies only to equitable claims, of which there are none in its complaint. (Dkt. 58-1 at 13). Zhang and Cell-Free did not respond to this argument, *see generally* dkt. 90, which is supported by extensive authority. *E.g.*, *Cline v. Berg*, 273 Va. 142, 147 (Va. 2007) ("The doctrine of 'unclean hands' is an ancient maxim of equity courts."); *Steves & Sons, Inc. v. JELD-WEN, Inc.*, 252 F. Supp. 3d 537, 548 (E.D. Va. 2017) ("The defense of unclean hands is an equitable one."); *Vienna Metro LLC v. Pulte Home Corp.,* 786 F. Supp. 2d 1076, 1084 (E.D. Va. 2011) ("Unclean hands prevents a party from obtaining equitable relief because of that party's own inequitable conduct," so it cannot be applied to a legal claim such as breach of contract.); *Plant v. Merrifield Town Ctr. Ltd. P'ship*, 711 F. Supp. 2d 576, 596 (E.D. Va. 2010). Hearing no opposition and finding Bonumose's argument supported by the law, the unclean hands affirmative defense will be stricken.

2.

Bonumose next attacks the remaining two defenses on the theory that an affirmative defense cannot be based on conduct by someone other than the plaintiff. Bonumose's theory overreads the law. There is no *per se* requirement that an affirmative defense be based on the plaintiff's conduct. *See* Fed. R. Civ. P. 8(c)(1) (requiring pleading of affirmative defenses, including ones that are or can be independent of plaintiff's actions, such as "statute of limitations," "statute of frauds," "license," and "illegality").[4] The Court thus must analyze each

---

[3] No party suggests that something other Virginia law applies to the substance of state law claims and defenses in this case.

[4] The cases cited by Bonumouse certainly found that particular affirmative defenses based upon third-party conduct were insufficient. But those were fact-specific decisions that did not set down a bright-line rule of the kind advanced by Bonumose. *See Waste Mgmt.*, 252 F.3d at 347 (holding that allegedly unconstitutional action by third-party governments could not be an affirmative defense, and that there was no basis for imputing those governments' conduct to the counterclaim defendant); *Clark v. Allen*, 139 F.3d 888, 1998 WL 110160, at *5 (4th Cir. Mar. 13,

affirmative defense on its own terms.

The first affirmative defense asserts that duress from Rogers caused Zhang and Cell-Free to enter into the AASA. A few cases applying Virginia law have concluded "there is no support for the proposition that a contract can be invalidated on the basis of third party duress," and Zhang and Cell-Free have not provided any. *A.V. v. iParadigms Liab. Co.*, 544 F. Supp. 2d 473, 481 (E.D. Va. 2008), *aff'd and rev'd in part on other grounds sub nom. A.V. ex rel. Vanderhye v. iParadigms, LLC*, 562 F.3d 630 (4th Cir. 2009); *Nelson v. Nelson*, No. 0603-05-2, 2005 WL 1943248, at *2 (Va. Ct. App. Aug. 16, 2005) (observing that party asserting duress "provides no support in Virginia law for the invalidation of a contract based on a claim of duress or undue influence of a third party, and we know of none"). Nonetheless, Rogers was personally a party to the AASA. (Dkt. 90-2 at 11).[5] Because it may be "sufficient to constitute duress that one party to the transaction is prevented from exercising his free will by reason of threats made by the other" party, *Norfolk Div. of Soc. Servs. v. Unknown Father*, 2 Va. App. 420, 435, 345 S.E.2d 533, 541 (1986) (quoting 6B Michie's Jurisprudence, *Duress and Undue Influence* §§ 2–3 (Repl. Vol. 1985)), a duress defense is theoretically available. *See Tazewell Cty. Dep't of Soc. Servs. v. Boothe*, No. 1388-01-3, 2002 WL 338743, at *5 (Va. Ct. App. Mar. 5, 2002); *cf. Nat'l Credit Union Admin. v. First Union Capital Markets Corp.*, 189 F.R.D. 158, 163 (D. Md. 1999) ("When questions of law are not well established, the decision of whether to strike a defense is 'quite properly . . . viewed as determinable only after discovery and a hearing on the merits.'") (quoting 5A Wright & Miller, *Fed. Prac. & Proc.* § 1381 (1990)).

As for the second affirmative defense of fraud or extortion against Rogers and Terebinth,

---

1998) (concluding actions taken in a third-party capacity did not support *specific* affirmative defenses that "all require proof of some conduct by the plaintiff that limits or bars recovery").

[5] He also signed on behalf of Bonumose and Terebinth.

Bonumose's attack on it falters on the answer's allegations. It is alleged that Rogers and Terebinth were acting on behalf of and in furtherance of Bonumose's interests. (*See* Answer ¶ 120). So even if some action on behalf of Bonumose was required, it was allegedly taken.

3.

Alternatively, Bonumose wants the first and second affirmative defenses stricken because—notwithstanding any duress or fraud—Zhang and Cell-Free supposedly "ratified" the AASA by accepting payments under it. This argument is procedurally premature, relying as it does on extrinsic facts and inferences.

Bonumose tries to prove something from nothing. The AASA requires Bonumose to pay Cell-Free. Bonumose says that because Cell-Free and Dr. Zhang "do *not* allege" the payments "have *not* been paid," it is therefore "undisputed" that payment *was* made. This is sleight of hand. That a pleading *omits* a fact cannot be used by an opposing party to infer the fact's existence, much less make it "undisputed." The "court is required to view the pleading under attack in a light most favorable to the pleader," not Bonumose. *Kelly v. United States*, 809 F. Supp. 2d 429, 433 (E.D.N.C. 2011).

What's more, Bonumose explicitly relies on factual assertions in Rogers' declaration about payment—again, facts not contained in the defendants' pleadings. (Dkt. 106 at 4–5 (citing dkt. 65 (Rogers Decl.) ¶¶ 9–10)). Bonumose goes so far as to cite to an "exemplar payment" via check, written from Bonumose to Cell-Free on March 31, 2017, for a "quarterly dividend." All of this might be powerful, perhaps conclusive, proof in favor of Bonumose's ratification argument. But Bonumose cannot resolve these extrinsic factual issues on a motion to strike. A "motion to strike a defense should not be granted when the sufficiency of the defense depends upon disputed issues of fact." *Kantsevoy v. LumenR LLC*, 301 F. Supp. 3d 577, 611 (D. Md.

2018); 5C Wright & Miller, *Fed. Prac. & Proc*. § 1381 (3d ed. Westlaw) (A "motion to strike will not be granted if . . . it raises factual issues that should be determined on a hearing on the merits."); *Thornhill v. Aylor*, No. 3:15-CV-00024, 2016 WL 258645, at *2 (W.D. Va. Jan. 20, 2016) ("A disputed question of fact cannot be decided on motion to strike. . . . [T]he court should defer action on the motion and leave the sufficiency of the allegations for determination on the merits."). The Court will not strike the first and second affirmative defenses.

### IV. The Counterclaim against Bonumose: Arbitration and Rule 12(b)(6)

The one and only counterclaim against Bonumose asserts that it breached the AASA by failing to meet, in either 2017 or 2018, contractual "milestones" regarding commercialization of tagatose. (Counterpleading ¶¶ 63, 110–18). Bonumose contends the counterclaim ought to be arbitrated. (Dkt. 58-1 at 3–9; dkt. 106 at 8–15). Its argument is complicated, based not on an arbitration clause in the AASA but on Bonumose's current Operating Agreement.

The argument goes roughly as follows: (1) the current Operating Agreement requires arbitration of any dispute between Bonumose and any of its members (including Cell-Free) regarding the "management or business" of Bonumose; (2) although Cell-Free did not sign the current Operating Agreement, it signed a predecessor Operating Agreement; (3) that predecessor Operating Agreement permitted amendments if at least 60% of Bonumose's "voting share units" voted for the change; (4) 60% of the voting share units did vote to add the arbitration clause to the current Operating Agreement; (5) thus, Cell-Free is bound by the current Operating Agreement, "just as it was bound by the terms of the version of the Operating Agreement it signed"; and (6) because the arbitration clause is broad enough to cover the counterclaim's theory of breach, *i.e.*, failure to meet business goals, the counterclaim must be arbitrated. (*See* dkt. 58-1 at 3–4, 6–7; dkt. 106 at 11).

Cell-Free contests several of these premises on the facts and the law. (Dkt. 90 at 2–20). But the Court can cut through the clutter. Even assuming Bonumose's elaborate argument demonstrates arbitratability, Bonumose has waived (or in arbitration vernacular, defaulted) its right to arbitrate.

Under the Federal Arbitration Act, a party loses its right to demand arbitration "if it is 'in default in proceeding with such arbitration.'" *Forrester v. Penn Lyon Homes, Inc.*, 553 F.3d 340, 342 (4th Cir. 2009) (quoting 9 U.S.C. § 3). Default occurs when a party demanding arbitration "so substantially utiliz[es] the litigation machinery that to subsequently permit arbitration would prejudice" the opposing party. *Id.* at 343. The opposing party has the "heavy burden" to show default. *Id*. The tardy invocation of arbitration is not enough to find default, particularly when the delay was relatively brief. *Id*. For instance, the Fourth Circuit has repeatedly found that a less-than-six-month delay presents little problem. *E.g.*, *id*. at 344; *Wheeling Hosp., Inc. v. Health Plan of the Upper Ohio Valley, Inc.*, 683 F.3d 577, 587 (4th Cir. 2012); *Maxum Foundations, Inc. v. Salus Corp.*, 779 F.2d 974, 982 (4th Cir. 1985).

Nonetheless, and importantly here, when "a party fails to demand arbitration during pretrial proceedings, and, in the meantime, engages in pretrial activity inconsistent with an intent to arbitrate, the party later opposing a motion to compel arbitration may more easily show that its position has been compromised, *i.e.*, prejudiced." *Fraser v. Merrill Lynch Pierce, Fenner & Smith, Inc.*, 817 F.2d 250, 252 (4th Cir. 1987). The "delay and the extent of the moving party's trial-oriented activity are material factors in assessing" whether the party opposing arbitration suffered prejudice. *Id*.

Here, Bonumose sat on the arbitration issue from the outset of the case, only to raise it over a year later, when Zhang and Cell-Free countersued. Bonumose's initial complaint sought a

declaratory judgment addressed to the very theory Cell-Free espouses in its counterclaim. Filed on May 16, 2017, the complaint alleged that Bonumose *did* satisfy its milestones under the AASA. (Dkt. 1 ¶¶ 70–71). And based in part on that allegation, Bonumose requested a declaratory judgment against Cell-Free to decide whether the AASA was breached and the parties' rights and duties going forward. (*Id*. ¶¶ 70, 74). Those same allegations and the same request for a declaratory judgment were replicated in Bonumose's amended complaint filed on August 15, 2017. (Dkt. 19 ¶¶ 67–71). The issue—whether Bonumose met its milestones, and the effect thereof on the parties' relationship under the AASA—is the same one raised by Cell-Free, but about which Bonumose now suddenly demands arbitration. (Counterpleading ¶¶ 63–75, 110–18).

Bonumose's effort to frame the AASA-based counterclaim over the milestones as "factually and legally distinct" from its own AASA-based declaratory judgment claim is too thin. (Dkt. 106 at 18). It says it only wants a judgment about its *future* duties under the contract, whereas the counterclaim is for *past* breaches of the milestone provisions. But both claims involve the interpretation of the AASA, its specific milestone provisions, and the concomitant facts about each parties' actions. At bottom, when it first filed this lawsuit, Bonumose put in dispute Cell-Free's reversionary rights, which turn in part on whether "Bonumose failed to meet certain identified milestones." (Dkt. 19 ¶ 67). Bonumose further alleged it "has met all of the milestones" and other obligations under the AASA. (*Id*. ¶ 68). And it sought a declaratory judgment to generally "clarify[] the rights of the parties" under the AASA, and specifically declare that Cell-Free "does not have reversionary rights" under the AASA—a question which, according to Bonumose's own allegations, was bound up with whether Bonumuse complied with the milestones. (*Id*. ¶¶ 67, 71). Nonetheless, no demand for arbitration was made—until a year

later, after Bonumose was countersued. *See Forrester*, 553 F.3d at 344 (finding default where claim was "factually intertwined" with other claims and, "perhaps more importantly, is part of the lawsuit that" the party seeking arbitration "chose for two years to litigate in court rather than in arbitration").

This delay was substantial, unlike other Fourth Circuit cases finding little problem with a lag time of only a few months. Bonumose failed to timely demand arbitration while engaging "in pretrial activity inconsistent with an intent to arbitrate." *Fraser*, 817 F.3d at 252. Its complaint, *sans* arbitration demand, most clearly shows as much. "Short of directly saying so in open court, it is difficult to see how a party could more clearly evince a desire to resolve a dispute through litigation rather than arbitration than by filing a lawsuit going to the merits of an otherwise arbitrable dispute." *Nicholas v. KBR, Inc.*, 565 F.3d 904, 908 (5th Cir. 2009).

But that is not all. Bonumose repeatedly chomped at the bit to engage in discovery, stressing the urgency of the matter to its business and the danger of spoliation by a civil defendant, Zhang, who also faces criminal prosecution. (*E.g.*, dkt. 37 (expressing concern that "continuing delay will increase the chances for spoliation of evidence"), 40 (opposing defendants' request for delay of discovery), 41 (asserting "unfair prejudice" if case were held until conclusion of Zhang's criminal trial in September 2018)). Bonumose's year-plus, wait-and-see approach to arbitration—while simultaneously pressing discovery and its own AASA-based, milestone-relevant declaratory judgment claim—has prejudiced Cell-Free. Cell-Free has had to collect, review, and produce documents and respond to interrogatories from Bonumose. (Dkt. 90 at 21). It was forced to respond to the lawsuit on the merits, first by submitting a dispositive motion, on which it filed opening and reply briefs. (Dkts. 23, 24, 28). The parties argued the motion before Magistrate Judge Hoppe, who issued a 47-page report and recommendation that

the Court later adopted. (Dkts. 44, 49, 51). When the motion was largely denied, Cell-Free had to investigate and respond to the complaint's 100-plus allegations, compose and lodge affirmative defenses, and of course file its compulsory counterclaim. Taking these circumstances into account—along with the fact that Bonumose itself placed an arbitrable claim at issue from the day it filed this case, yet delayed its arbitration demand for over a year—the Court concludes Bonumose defaulted any right to arbitrate the counterclaim that it may have had. *See Forrester*, 553 F.3d at 342, 344; *Fraser*, 817 F.2d at 252; *Raju v. Murphy*, 709 F. App'x 318, 319 (5th Cir. 2018).

That does not end the matter, however. The parties further dispute whether the counterclaim against Bonumose is sufficiently pled.[6] The Court must draw the facts and reasonable inferences in favor of the pleading party, but it does not credit the pleading's legal conclusions, and there must be more to the counterclaim than a formulaic recitation of the elements. *See generally Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. Twombly*, 550 U.S. 544 (2007). "The elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 267 Va. 612, 619 (Va. 2004).

As explained earlier, the AASA required Bonumose to meet certain milestones. By April 1, 2017, it was to have entered into a contract with a business partner to support the development of tagatose. (Dkt. 90-2 at 9). And by April 1, 2018, it was to have started up a tagatose pilot plant. (*Id.*).

---

[6] Bonumose says Zhang does not have a valid counterclaim against it. (Dkt. 58-1 at 19–20). Zhang does not oppose this argument. (*See* dkt. 90 at 24–25). Accordingly, the counterclaim is treated as lodged only by Cell-Free.

Looking to the allegations, they are sparse.  The ones directly under the counterclaim, ¶¶ 111–18, are simply legal conclusions and formulaic recitations of the elements, *e.g.*, "Bonumose failed to meet the April 1, 2017 [and 2018] milestone[s] of the AASA."  The earlier allegations incorporated by reference fair little better.   Those too contain mere legal conclusions that a breach occurred—they simply state "upon information and belief" that the milestones were not met.  (Counterpleading ¶¶ 70, 73).

Cell-Free's brief asserts this is not a problem because it has alleged its "basis for concluding that Bonumose actually failed to meet those milestones"—that is, "Bonumose's *refusal to provide proof* of meeting the milestones."   (Dkt. 90 at 24 (emphasis added)). Specifically, Cell-Free alleged that "[b]y correspondence through counsel, [Cell-Free] asked Bonumose for evidence that it had complied with" the milestones and—while "Bonumose asserted it met the milestone[s]"—it "did not provide any evidence that Bonumose had complied." (Counterpleading ¶¶ 72, 74).

This is not sufficient to state a claim.  "Their lawyers refused to meet our lawyers' demands for evidence" is not a well-pled fact showing a violation of the law.  For one, it improperly shifts the burden of proof to the defendant.  For another, if Cell-Free's theory held water, virtually every complaint would state a claim, an absurd result.  Any plaintiff's attorney could demand (pre-filing and to counsel's satisfaction, no less!) that defendant provide evidence *disproving* plaintiff's hypothesized theory.  Any competent defense attorney would refuse that demand.  And *voila*, defendant's refusal to disprove plaintiff's claim (however thin on its own terms) becomes proof that plaintiff has one.  The proposition disproves itself.  The Court rejects Cell-Free's sole argument that its request for "proof of compliance and Bonumose['s] consistent[] refus[al] to provide that proof" creates "a reasonable and plausible inference that the

milestones were not met." (Dkt. 90 at 25). The counterclaim against Bonumose will be dismissed.

## V. The Presence of Rogers and Terebinth

Finally, we come to Rogers and Terebinth, against whom Zhang and Cell-Free advance what they call counterclaims. Rogers and Terebinth were not parties to the case originally. Bonumose moves to strike them, and the claims against them, from the case due to improper joinder. (Dkt. 55).[7]

A nonparty can enter a case in several ways. For instance, a defendant can implead an absent party "who is or may be liable to [the defendant] for all or part of the claim against" the defendant. Fed. R. Civ. P. 14. This is known as "third-party practice," in the parlance of Rule 14. "A third-party claim must be derivative of the main claim and is allowable where a third-party plaintiff seeks reimbursement for all or part of what may be potentially owed the plaintiff." *Osborne v. Bed Bath & Beyond, Inc.*, No. 7:12-CV-99, 2012 WL 4795709, at *1 (W.D. Va. Oct. 9, 2012). "Typically, proper third party claims involve one joint tortfeasor impleading another, an indemnitee impleading an indemnitor, or a secondarily liable party impleading one who is primarily liable. Absent such derivative liability, a third party claim must fail." *Id.* at *1 (quoting *Watergate Landmark Condo. Unit Owners' Assoc. v. Wiss, Janey, Elstner Assoc., Inc.*, 117 F.R.D. 576, 578 (E.D. Va. 1987)).

Bonumose contends that the counterpleading's addition of Rogers and Terebinth was not a proper invocation of Rule 14. (Dkt. 55-1 at 9–10). Zhang and Cell-Free concede the point. (Dkt. 91 at 5 n.1). So Rogers' and Terebinth's presence is not explained by third-party practice.

---

[7]   Because of the Court's disposition of Bonumose's motion to strike, the Court does not reach the merits of Rogers and Terebinth's motion to dismiss for failure to state a claim. Instead, their motion will be denied as moot.

That leaves joinder, but the counterpleading has procedural problems with that avenue. A counterclaim is a claim asserted "against an *opposing* party." Fed. R. Civ. P. 13(a), (b) (emphasis added). But there was only one opposing party at the time they filed their supposed counterclaims, Bonumose, so seemingly only the claim against it was a proper counterclaim.

Nonetheless, the federal rules permit a defendant to assert a counterclaim against an opposing party, and then join a nonparty to that counterclaim. This is contemplated by Rule 13(h), which states that "Rules 19 [concerning required joinder of parties] and 20 [concerning permissive joinder of parties] govern the addition of a person as a party to a counterclaim." In other words, through Rule 13(h), there is a mechanism for a defendant to make a counterclaim against a plaintiff, and then also join to that counterclaim an absent party who the defendant thinks should be a counterclaim co-defendant. That is what Zhang and Cell-Free tried to accomplish, albeit ineffectually.

The leading treatise on federal procedure provides one reason why. "[C]ourts generally have interpreted Rule 13(h) as authorizing the joinder of parties only for the purpose of adjudicating counterclaims . . . that have *already been interposed* in the action or that are being asserted *simultaneously with the motion to add new parties*." 6 Wright & Miller, *Fed. Prac. & Proc.* § 1434 (Westlaw 3d ed. Apr. 2018) (emphasis added). Neither condition was satisfied here. Zhang and Cell-Free have not moved for joinder, and their looping in of Rogers and Terebinth was not based on already-interposed counterclaims.

There is a more substantive reason the "counterclaims" against Rogers and Terebinth are defective: They are not counterclaims at all, just new claims exclusively against new parties. A counterclaim "may not be directed solely against persons who are not already parties to the original action, but must involve at least one existing party. If it is not directed to an existing

party, neither the counterclaim nor the party to be added will be allowed in the action." 6 Wright & Miller, *Fed. Prac. & Proc.* § 1435 (Westlaw 3d ed. Apr. 2018).[8] A party "may not assert a claim exclusively against non-parties and call it a 'counterclaim.' A counterclaim, at the very minimum, must be asserted against one party that is already in the lawsuit." *U.S. ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co.*, 265 F.R.D. 266, 270 (E.D. La. 2010). Claim 1 asserts a breach of contract by only Terebinth. Claim 2 asserts a breach of fiduciary duty by only Rogers. Claim 3 asserts defamation by only Rogers. Claim 5 asserts a breach of contract by only Rogers. And claim 6 asserts tortious interference by only Rogers and Terebinth. Bonumose is nowhere to be found in these "counterclaims." Thus, claims 1, 2, 3, 5, and 6 of the counterpleading are faux counterclaims that will be stricken.

Numerous cases support this conclusion. For instance, in *AllTech Communications, LLC v. Brothers*, the district court refused to permit so-called counterclaims lodged against nonparties, observing that the "weight of authority holds that Rule 13(h) cannot be used to assert a counterclaim or crossclaim solely against an unnamed party." 601 F. Supp. 2d 1255, 1260 (N.D. Okla. 2008); *see Glynn v. EDO Corp.*, 641 F. Supp. 2d 476, 480 n.3 (D. Md. 2009) (noting "federal law is clear" on this point); *Hawkins v. Berkeley Unified Sch. Dist.*, 250 F.R.D. 459, 462 (N.D. Cal. 2008) ("[T]he courts have held that Rule 13(h) requires that any such joinder of a new party be anchored to a counterclaim or cross-claim against an original party.").

As in this case, the *AllTech* court observed that "there are no common claims asserted against" the non-parties and the plaintiff, rendering the claims "procedurally infirm." *AllTech*, 601 F. Supp. 2d at 1261; *e.g.*, *Microsoft Corp. v. Ion Technologies Corp.*, 484 F. Supp. 2d 955,

---

[8] "Rule 13's reference to 'opposing parties' does not mean that a counterclaim may be asserted against any non-party on the theory that, once the counterclaim is asserted, the non-party will become an opposing party." *U.S. ex rel. Branch Consultants, L.L.C. v. Allstate Ins. Co.*, 265 F.R.D. 266, 269 (E.D. La. 2010).

959, 965 (D. Minn. 2007) (chiding defendants for "improperly assert[ing] counterclaims" that were "solely against persons who are not parties to the original action"); *Protective Ins. Co. v. Plasse*, No. CV 13-00297-KD-M, 2013 WL 12155334, at *1, 2 (S.D. Ala. Sept. 3, 2013) (holding that since negligence counterclaim, unlike other counterclaims, was "not directed against existing party Protective," it "is not allowed as a counterclaim under Rule 13"); *A.L. Williams & Assocs., Inc. v. D.R. Richardson & Assocs., Inc.*, 98 F.R.D. 748, 751, 753 (N.D. Ga. 1983) (dismissing counterclaims against nonparties absent a proper joinder motion but retaining counterclaim against plaintiff); *United States v. Techno Fund, Inc.*, 270 F. Supp. 83, 85 (S.D. Ohio 1967) (An "additional party may not be brought in for purposes of counterclaim where the counterclaim is directed solely against the new party and asserts no rights against the original plaintiff."); *see also Glynn*, 641 F. Supp. 2d at 479 n.3; *Prosperity Sys., Inc. v. Ali*, No. CIV. CCB-10-2024, 2011 WL 1542507, at *8 (D. Md. Apr. 22, 2011).

In sum, Zhang and Cell-Free have failed to bring Rogers and Terebinth into this case in a procedurally acceptable manner. The motion to strike Rogers and Terebinth, and the ersatz counterclaims against them, will be granted.

## SUMMARY

Zhang and Cell-Free's unclean hands affirmative defense will be stricken. Rogers, Terebinth, and the so-called counterclaims against them will be stricken as improperly joined. The counterclaim against Bonumose will not be sent to arbitration, but it will be dismissed. An appropriate order will issue.

Entered on this ____6th____ day of August, 2018.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE