CLERKS OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
10/31/2018

JULIA C. DUDLEY, CLERK
BY: /s/ J. JONES
      DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF VIRGINIA
#### Charlottesville Division

| | | |
|---|---|---|
| BONUMOSE BIOCHEM, LLC et al., | ) | |
| Plaintiffs, | ) | Civil Action No. 3:17-cv-00033 |
| | ) | |
| v. | ) | MEMORANDUM OPINION & ORDER |
| | ) | |
| YI-HENG PERCIVAL ZHANG et al., | ) | By:   Joel C. Hoppe |
| Defendants. | ) |        United States Magistrate Judge |

The Plaintiffs, Bonumose Biochem, LLC and Bonumose LLC (collectively "Bonumose"), bring this action alleging that Defendants, Yi-Heng Percival Zhang ("Zhang") and Cell-Free Bioinnovations, Inc. ("CFB") (collectively "Defendants"), misappropriated Bonumose's confidential and trade secret information relating to Tagatose. This matter is before the Court on Bonumose's Motion to Compel and For an Order to Show Cause Why Sanctions Should Not Be Imposed, ECF No. 160. The motion has been fully briefed, *see* ECF Nos. 161, 172, 177, and the Court held a telephonic hearing on October 12, 2018, at which the parties appeared by counsel, ECF No. 185.

### I. Discovery Requests and Party Positions

The current dispute concerns whether Defendants failed to produce information or documents in their possession relating to Zhang's contacts with the Tianjin Institute of Biotechnology ("Tianjin"). The specific requests at issue are Bonumose's requests for production of documents served on both Defendants in March 2018, *see* Pls.' Mot. to Compel, Exs. C, D, ECF Nos. 160-6 to 160-7, and Bonumose's interrogatories served on Defendant Zhang in April 2018, *id.* Ex. G, ECF No. 160-10. In each request, Bonumose sought information concerning communications and dealings between Defendants and Tianjin, including those related to Tagatose. *See id.*

1

Bonumose alleges that since serving its discovery requests, "Defendants have produced little information involving Defendants and Tianjin and repeatedly . . . represented to Bonumose and the Court that no additional discoverable documents or information exist." Pls.' Br. in Supp. of Mot. to Compel ("Pls.' Br.") 2, ECF No. 161. Bonumose further alleges that pursuant to a subpoena duces tecum it issued to Virginia Polytechnic Institute and State University ("Virginia Tech"), in September 2018 it received documents purportedly showing dealings involving Zhang and Tianjin that Defendants had not produced in discovery. *See* Decl. of Erik Stidham ¶¶ 2–4 (Sept. 21, 2018), ECF No. 160-2. Among these documents was a September 2016 Chinese-language contract between Tianjin and Chengdu Yuanhong Biotech Co., Ltd. (the "Chengdu Contract") that listed Defendant Zhang as the "Project Contact Person" for Tianjin, Pls.' Br. 2–3 (citing Pls.' Mot. to Compel, Exs. A, B, ECF Nos. 160-4 to 160-5), and an article listing Tianjin in the header and Zhang as the author (the "Zhang Article") describing a scientific process related to Tagatose, *id.* at 8 n.2 (citing Pls.' Mot. to Compel, Exs. K, L, ECF Nos. 160-14 to 160-15).

Bonumose argues that Virginia Tech's document production includes "potentially case-dispositive evidence" that shows "Defendants and their counsel wrongfully withheld responsive documents and failed to preserve information undisputedly related to the litigation." Pls.' Reply Br. in Supp. of Mot. to Compel. ("Pls.' Reply Br.") 1, ECF No. 173. Accordingly, Bonumose seeks an order from this Court under Rule 37 of the Federal Rules of Civil Procedure requiring, among other things, that an independent third-party vendor take control of and search all information in the custody and control of Defendants and that Defendants make available for deposition the custodian of their documents. Pls.' Br. 11–12. Bonumose further asks this Court to enter an order requiring Defendants to show cause why sanctions should not be imposed under

28 U.S.C. § 1927 or the Court's inherent power as described in *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44–45 (1991).

In response, Defendants contend that they took appropriate steps to preserve and produce relevant discovery materials, including their counsel's issuance of a litigation hold to Defendants and use of broad search terms to collect information responsive to Bonumose's requests. *See* Defs.' Br. in Opp'n to Pls.' Mot. to Compel ("Defs.' Br.") 3, ECF No. 172. Defendants also assert, however, that in September 2017, federal law enforcement agents arrested Zhang "without any advanced notice to counsel or otherwise . . . ." *Id.* at 4. Concurrent with the arrest, agents searched his home and seized files, computers, cell phones, and other materials. *Id.* They further explain that although Zhang was released on bond in December 2017, he has not had access to the materials seized by law enforcement, nor has he been able to access his email account with Tianjin.[1] *Id.* Defendants argue that they did not have possession, custody, or control of the materials potentially responsive to Bonumose's discovery requests and thus had no duty to produce them. *See id.* at 12.

Furthermore, Defendants argue that sanctions under Rule 37 are improper in this case because counsel for Bonumose did not meet and confer in good faith with Defendants' counsel prior to filing the instant motion. *See* Defs.' Br. 10. Defendants also argue that sanctions are not appropriate because they did not act with subjective bad faith to spoliate or deliberately withhold responsive information, nor did they violate a standing court order. *Id.* at 11–18.

## II. Discussion

*A.     Relevant Background and Procedural History*

---

[1] Defendants assert that Zhang was able to gain partial access to his Virginia Tech email account by logging in and downloading information onto his laptop, but he apparently experienced technical difficulties, which Defendants state they "will seek to remedy" Defs.' Br. 4.

This case arises out of an allegedly improper disclosure by Defendants of confidential and trade secret information belonging to Bonumose. According to Plaintiffs, in April 2016, Defendants transferred to Bonumose the intellectual property rights and certain confidential and trade secret information related to the production of Tagatose. Second Am. Compl. ¶¶ 68–69, ECF No. 150. Tagatose is a naturally occurring sugar found in certain grains, fruits, dairy, and the cacao tree that can serve as an alternative to table sugar without many of the adverse health effects. *See id.* ¶ 14. Accordingly, the ability to synthetically produce Tagatose has significant commercial implications. *See id.* ¶ 16. Pursuant to the April 2016 agreement, Defendants were prohibited from competing against Bonumose with regard to the production of Tagatose or from disclosing information about Tagatose production to any third parties. *Id.* ¶ 70.

According to Bonumose, sometime after entering into the April 2016 agreement, Defendants wrongfully provided confidential information concerning Tagatose to Tianjin. *Id.* ¶ 78. On November 1, 2016, Tianjin filed a patent application for the production of Tagatose that mirrored a provisional patent application that Bonumose had filed. *See id.* ¶ 86. The Tianjin application included two named inventors, but also "contain[ed] an unusual statement that 'other inventors request[ed] an unlisted name.'" *Id.* ¶ 88. Bonumose believes Zhang to be one of the anonymous co-inventors listed in this application. *Id.* ¶ 89. On May 16, 2017, Bonumose filed the present suit against Defendants. Compl., ECF No. 1. Plaintiffs assert claims for breach of contract, misappropriation of trade secrets, conversion, and fraud. *See* Second Am. Compl. ¶¶ 102–75.

On March 30, 2018, Bonumose propounded two separate requests for production to Defendants Zhang and CFB. In pertinent part, these requests asked Defendants to provide Bonumose with all documents in their possession relating to Tianjin. Pls.' Mot. to Compel, Ex.

C, at 3–4; *id.* Ex. D, at 3. On or around April 30, 2018, Zhang and CFB responded to these requests indicating that, subject to certain objections and limitations, they would provide responsive materials. *Id.* Ex. E, at 8–10, ECF No. 160-8; *id.* Ex. F, at 11, ECF No. 160-9. On April 16, 2018, Bonumose submitted interrogatories to Zhang asking him to "[d]escribe all of [his] interactions with Tianjin University or any of its affiliates . . . since January 1, 2015." *Id.* Ex. G, at 3. Zhang responded with certain objections, including the limitation that he "construe[d] this [i]nterrogatory to call for disclosure of any communications with any representative of Tianjin . . . on or after April 1, 2016[,] regarding confidential information concerning the Assigned Assets."[2] *Id.* Ex. H, at 10, ECF No. 160-11. He then stated that "no such interactions have occurred." *Id.*

On July 2, 2018, the parties appeared via telephone for a hearing on various discovery disputes, including Defendants' purportedly insufficient responses to Bonumose's interrogatories and requests for production of documents. ECF No. 76. Counsel for Plaintiffs was particularly concerned with Defendants' refusal to provide information concerning Tianjin, *see* July 2, 2018 Hr'g Tr. 6:6–8, ECF No. 82, and with Defendants' rewriting the relevant timeframe for interrogatory responses from January 1, 2015, to April 1, 2016, *see id.* at 67:6–22. During the hearing, counsel for Defendants insisted that they had produced all relevant documents concerning the relationship between Defendants and Tianjin. *See id.* at 79:10–20 ("We have disavowed in writing that there were any communications with Tianjin regarding any confidential information regarding Tagatose. We have produced any document between ourselves and Tianjin that would have hit on the term Tagatose and a number of other search

---

[2] The "assigned assets" generally refers to the intellectual property rights to certain confidential and trade secret information related to production of Tagatose acquired by Bonumose in April 2016. *See* Second Am. Compl. ¶¶ 69–70.

terms that we applied."); *id.* at 80:16–24 (responding "[t]hat's right" to the Court's question whether Defendants' counsel had produced everything that they were aware of that would be responsive to a request for communications between Zhang and Tianjin about Tagatose); *id.* at 87:24–88:11 ("I'll go back and ask my client again, but . . . . [t]here were no disclosures relating to Tagatose. There ha[ve] been no documents reflecting any disclosures relating to Tagatose . . . . But with respect to your Honor's request that anything that bears on Tagatose be produced and all of those disclosures be provided, we will do that to the extent that we haven't already. And, frankly, I believe that we have, at least with respect to materials in our possession, custody, and control."). Moreover, Counsel for Defendants assured the Court that they would "provide information regarding any allegedly improper disclosure to Tianjin prior to [April 1, 2016]." *Id.* at 70:14–21.

On or around July 17, 2018, Zhang provided the following information in a supplemental interrogatory response:

> Between January 1, 2015 and April 1, 2016, Prof. Zhang had limited interactions with [Tianjin] relating to tagatose-related technologies. Prof. Zhang's tagatose-related interactions with [Tianjin] during this period were exclusively to discuss a potential investment by [Tianjin] in CFB and/or partnership between [Tianjin] and CFB. Prof. Zhang did not disclose any confidential information relating to CFB's tagatose technology during those interactions, as [Tianjin] declined to execute a non-disclosure agreement.
>
> Prof. Zhang has not, at any time (including after April 1, 2016), disclosed to [Tianjin] any confidential information relating to tagatose-related Assigned Assets, as that phrase appears in the AASA.

Pls.' Mot. to Compel, Ex. J, at 13–14, ECF No. 160-13.

On August 30, 2018, the parties again appeared by telephone to discuss various discovery disputes. ECF No. 140. At that hearing, counsel for Defendants again insisted that they had produced all relevant information relating to the relationship between Defendants and Tianjin:

> My point is that we have not withheld information relating to any relationship between ourselves and Tianjin as relates to tagatose. . . . [T]he universe we're living in is that we have turned ourselves upside down; we have answered questions; we have sought, at least, to meet and confer with counsel over whether further information is provided or is necessary or appropriate . . . . And they are saying "I don't believe you," which is their right. But I don't know what else we can provide that would . . . dispel that. Certainly nothing that would be relevant or fair or proportional.

Aug. 30, 2018 Hr'g Tr. 21:22–22:12, ECF No. 157.

Plaintiffs filed the instant motion on September 21, 2018, after having received documents responsive to their Virginia Tech subpoena on September 7, 2018. *See* Decl. of Erik Stidham ¶ 2. On October 2, Bonumose received a small document production from counsel for Defendants, which contained another copy of the Zhang Article. *See* Pls.' Reply Br., Decl. in Supp. ¶¶ 3–4, ECF No. 174-1. On that same day, Defendants filed their brief in opposition to Bonumose's motion.

B.      *Meet and Confer Requirement*

As a threshold matter, I must determine whether Bonumose should have further conferred or attempted to confer with Defendants prior to filing their Motion to Compel. Rule 37 permits a party seeking discovery to move for an order compelling production where another party fails to answer an interrogatory under Rule 33 or fails to produce documents under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iii)–(iv). The Rule also provides that any such "motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make a disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1). Rule 37(a)(5) addresses cost-shifting sanctions: "If the motion [to compel] is granted . . . the court must . . . require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees." Fed. R. Civ. P. 37(a)(5)(A).

The rule instructs that the court must not order such payment if "the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action." Fed. R. Civ. P. 37(a)(5)(A)(i).

Here, Bonumose appended to its motion to compel a declaration by Erik Stidham, counsel for Plaintiff, stating that "[t]hroughout the course of discovery in the above-captioned matter, we repeatedly have voiced our concerns to Defendants, and met and conferred, about the minimal discovery Defendants have produced related to their communications and relationships with Tianjin . . . ." Decl. of Erik Stidham ¶ 5. In response, Defendants assert that "Bonumose did not communicate with Defendants regarding any topic between serving the Virginia Tech production and seeking judicial intervention." Defs.' Br. 5. They note that Plaintiffs filed this motion to compel only "seven days after delivering the Virginia Tech materials." *Id.*

Federal district courts have broad discretion under Rule 37 to determine whether a movant has adequately conferred with the opposing party prior to filing a motion to compel. *See Marshall v. GE Marshall, Inc.*, No. 2:09cv198, 2012 WL 5831195, at *4 (N.D. Ind. Nov. 15, 2012). In making such a determination, a court must consider the totality of the circumstances surrounding the discovery process. *Id.* (citing *Kidwiler v. Progressive Paloverde Ins. Co.*, 192 F.R.D. 193 (N.D. W. Va. 2000)). In circumstances where past efforts to confer demonstrate that subsequent efforts would have been futile, courts have found that additional attempts to confer are not required. *See U.S. Fire Ins. Co. v. Bunge N. Am., Inc.*, No. 05-cv-2192, 2008 WL 2222022, at *2 (D. Kan. May 28, 2008); *Prescient Partners, L.P. v. Fieldcrest Cannon, Inc.*, No. 96 Civ. 7590, 1998 WL 67672, at *3–4 (S.D.N.Y. Feb. 18, 1998) (citing cases where courts excused the meet-and-confer requirement when efforts to compromise informally would have been futile). The purpose of requiring parties to meet and confer before coming back to court is

to "curtail undue delay and expense in the administration of justice," *Autotech Techs. Ltd. P'ship v. Automationdirect.com, Inc.*, No. 05-C-5488, 2007 WL 2736681, at *2 (N.D. Ill. Sept. 10, 2007) (quoting N.D. Ill. L.R. 37.2), and "weed out disputes that can be amicably resolved without judicial intervention, thereby freeing the court's resources for the disputes that truly cannot," *Physicians Healthsource, Inc. v. A-S Medication Sols., LLC*, No. 12-cv-5105, 2017 WL 3922175, at *4 (N.D. Ill. Sept. 7, 2017).

Here, Defendants do not challenge Bonumose's assertion that they have "repeatedly" met and conferred with defense counsel concerning Bonumose's discovery request for materials related to Defendants' communications and relationships with Tianjin. Indeed, during the July 2 and August 30 discovery hearings, Defendants portray their efforts to confer with Bonumose on this issue as exhaustive. *See* Aug. 30, 2018 Hr'g Tr. 21:9–22:12 (referencing the parties' correspondence and discussions over disclosure of material relating to Defendants' relationship with Tianjin); July 2, 2018 Hr'g Tr. 85:10–14 (referencing a "meet and confer" about discovery on Defendants' communications with Tianjin). Instead, Defendants argue that Bonumouse did not confer with them regarding the most recent revelation from Bonumose's receipt of Zhang's materials from Virginia Tech. Defs.' Br. 5.

I find that Bonumose's prior attempts to confer with Defendants in a good-faith effort to obtain materials relating to Defendants' relationship with Tianjin before seeking the Court's intervention through this motion were sufficient to satisfy the meet-and-confer requirements under Rule 37(a). Bonumose complained to Defendants on multiple occasions that they had not received all materials regarding communications between Defendants and Tianjin about Tagatose. Defendants supplemented some discovery responses, but ultimately asserted that all relevant communications had been produced, whether Bonumose believed it or not. Moreover,

even when confronted with the discovery materials from Virginia Tech, Defendants continued to take an ambiguous position on why these materials had not been produced. *Compare, e.g.*, Defs.' Br. in Opp'n to Mot. for Expedited Consideration 2–3 (arguing that the Chengdu Contract has "no legal effect or significance in this case"), ECF No.164, *with* Oct. 12, 2018 Hr'g Tr. 34:1–11 (Defendants' counsel indicating that they are not asserting the Virginia Tech materials are irrelevant for discovery purposes), ECF No. 190.

Perhaps Defendants may have been willing to perform an additional review of their system to ensure that they had not accidentally overlooked relevant materials had Bonumose conferred with them before filing this motion. *See* Oct. 12, 2018 Hr'g Tr. 33:21–34:11 (indicating that Defendants were "taking steps to correct" an apparent "hole in [their] production"). Nevertheless, it is highly unlikely that Defendants would have been amenable to much of the relief sought by Bonumose in this motion, such as retaining a third-party vendor to take control of their materials or requesting and producing all materials in the possession of the government.[3] Indeed, they currently oppose such relief. Where the parties have conferred for a number of months regarding a particular topic of discovery and they have raised the discovery dispute twice before with the Court, I cannot find that Rule 37 requires the party seeking discovery to confront the non-producing party with evidence purportedly showing non-compliance with its discovery obligations. Certainly Bonumose could have discussed the Virginia Tech materials with Defendants and possibly narrowed or eliminated some of the issues raised in its motion, but many of the issues undoubtedly would have remained for the Court to

---

[3] Defendants also take the position that a protective order entered by Chief United States District Judge Michael F. Urbanski in a parallel criminal matter against Defendant Zhang prohibited Defendants from disclosing certain materials to Bonumose. *See* Oct. 12, 2018 Hr'g Tr. 22:1–15. Accordingly, it is not clear that Defendants would have even been willing to turn over any additional materials absent Court intervention.

resolve. *See In re: Fluidmaster, Inc.*, No.1:14cv5696, 2018 WL 505089, at *3 (N.D. Ill. Jan. 22, 2018) (refusing to deny a Rule 37 motion on the basis of the movant's failure to meet and confer where the parties had already resolved one issue, and a conference between the parties could not have resolved the issues remaining before the court). Considering these circumstances, I find that Bonumose's counsel reasonably discharged their obligation to confer with opposing counsel about securing materials evidencing Defendants' relationship with Tianjin as it relates to Tagatose.

## C.   Responses to Discovery Requests

Next, I must assess whether Defendants failed to adequately respond to Bonumose's discovery requests. *See* Fed. R. Civ. P. 37(a)(3)(B), (4). Bonumose argues that Defendants failed to provide requested information detailing the relationship between Defendants and Tianjin, even though recently uncovered documents suggest such information exists. *See* Pls.' Br. 2–3. In their opposition brief, Defendants argue that they satisfied their duty to preserve potentially relevant documents by, among other things, circulating a litigation hold notice and identifying and "harvest[ing] an initial pass of potentially relevant documents" after retaining counsel. Defs.' Br. 11. Defendants further argue that their reasonable efforts to preserve potentially discoverable information were hampered by the Government's seizure of Defendant Zhang's computer, smartphone, and other electronic devices in September 2017. *Id.* at 2, 12. They state that at least some of the materials on those devices are subject to a strict protective order in the parallel criminal matter. They contend the protective order prohibits them "from providing further detail or information regarding the nature or extent of the seizure . . . ." *Id.* at 2 n.2. Defendants argue that they were unable, and thus not obligated, to produce all of the requested documents because

11

such documents were not in their "possession, custody, or control" following the Government's seizure. *Id.* at 7, 13.

The Court notes several problems with this position. First, it is unclear why all relevant documents were not found during Defendants' so-called "harvest[ing]" process, which initially took place prior to Zhang's arrest. Defendants assert that they retained counsel in June 2017, after which they collected "[a] first wave of potentially relevant sources and evidence . . . through application of broad search terms, including several email addresses, 'Bonumose', 'Terebinth', 'Rogers', 'Wichelecki', 'Tagatose', 'TIB', 'Tianjin Institute', and several Chinese-language variants of tagatose and Tianjin." Defs.' Br. 3. These assertions do not adequately explain why the use of certain search terms, such as "Tianjin Institute" and "Tagatose," did not return documents containing those terms, as would be expected. Moreover, Defendants fail to explain the source of the materials harvested, such as whether they were collected from Zhang's Tianjin email account or social media sources such as WeChat.[4]

Defendants also do not sufficiently explain Zhang's apparent efforts to recover lost material following the Government's seizure of his property. They represent that Zhang was able "to recover partial access to his Virginia Tech email account by logging in and downloading available information onto his laptop." Defs.' Br. 4. They further assert that their "investigation is ongoing" and that the process "appears to have suffered from glitches and technical shortcomings that Defendants will seek to remedy." *Id.* Defendants do not explain, however, why they apparently relied on Zhang alone to recover lost material (rather than, perhaps,

---

[4] Bonumose also argues, and the Court agrees, that Defendants fail to explain how the seizure of physical electronic devices would necessarily interfere with Defendants' ability to access documents that might exist on cloud-based platforms, such as WeChat. *See* Pls.' Reply Br. 15 n.11. Indeed, Defendants note in their brief that Zhang received an unexecuted draft of the Chengdu Contract through a WeChat conversation on which he was copied. Defs.' Br. 14. Defendants do not address whether they made any initial effort to search for cloud-based documents or later attempted to recover any copies of documents that were lost.

retaining someone with expertise in digital data recovery), nor do they identify the particular information that Zhang will now try to recover or any sort of timeline for completion. Ultimately, these gaps in Defendants' explanation necessitate some degree of Court intervention to ensure that Bonumose receives full and accurate responses to their legitimate discovery requests.

Second, while the language regarding "possession, custody, or control" of documents and electronically stored information is a prerequisite to requiring production under Rule 34, no such condition exists with regard to interrogatory responses under Rule 33. *See* Fed. R. Civ. P. 33(b)(3)("Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath."). In his initial response to Plaintiffs' interrogatory requesting a description of all interactions with Tianjin since January 1, 2015, Zhang unilaterally redefined the parameters of the inquiry to include only "confidential information concerning the Assigned Assets" that took place "on or after April 1, 2016," and then stated, "no such interactions have occurred." Pls.' Mot. to Compel Ex. H, at 4.[5] Even if this reinterpretation were acceptable—it was not, Zhang still did not provide a convincing explanation why his interrogatory response made no mention of the Chengdu Contract, which was dated September 2016 and identifies Zhang as the "project contact person" for Tianjin, *id.* Ex. B, at 2.[6] *Cf. Diersen v. Walker*, No. 00-C-2437, 2003 WL 21317276, at * (N.D. Ill. June 6, 2003) ("A party cannot destroy documents based solely on its own version of the proper scope of the complaint."). Instead, Defendants argued that the document was not relevant—a contention with which I must disagree, at least for

---

[5] Though Defendants later stated at the July 2 hearing that they would "provide information regarding any allegedly improper disclosure to Tianjin prior to [April 1, 2016]," July 2, 2018 Hr'g Tr. 70:14–21, their supplemental interrogatory response was not materially different with regard to communications that took place on or after that date, *see* Pls.' Mot. to Compel  Ex. J, at 13–14.

[6] The Chengdu Contract lists September 2016 as the "Signed on" date and states that the contract's "Effective term" will run from October 2016 to September 2018. Pls.' Br. Ex. B, at 1.

discovery purposes.[7] *See Downs v. Va. Health Sys.*, No. 5:13cv83, 2014 WL 12776888, at *2

(W.D. Va. June 2, 2014). Later, they asserted that "the only reason [Zhang] had the unexecuted

document at all is because he was copied on a WeChat conversation between representatives of

Chengdu and [Tianjin]." Defs.' Br. 14 (capitalization altered). They further represent that "Zhang

advised [Tianjin] that he could play no role because of his obligations to Bonumose," *id.*, but

they have not produced any material to corroborate their version of events, *see* Pls.' Reply Br.

Decl. in Supp. ¶ 7.  Even accepting Defendants' benign characterization of these facts as true, it

is inconsistent with Zhang's statement in his interrogatory response that "no such interactions"

took place after April 1, 2016.

Counsel's explanation of Zhang's interrogatory response has created even more

ambiguity on this issue. In his supplemental interrogatory response, Zhang stated that he "had

*limited* interactions with [Tianjin] relating to tagatose-related technologies" between January 1,

2015 and April 1, 2016, Pls.' Mot. to Compel,  Ex. J, at 13 (emphasis added), but defense

counsel stated at the October 12 hearing that Zhang "could not possibly, in an interrogatory

response, respond to every possible communication regarding tagatose. . . . There's just too

much," Oct. 12, 2018 Hr'g Tr. 28:15–18. Thus, counsel's statement indicating that "too much"

information existed about Zhang's Tagatose-related communications seems to contradict

Zhang's interrogatory response that those interactions were limited.

Zhang's interrogatory responses also fail to identify the circumstances surrounding the

Zhang Article, which lists Tianjin in the header and discusses Tagatose. Defendants state that

"Zhang sent [this] document to a third party Chinese entity in January 2016, subject to an NDA,

in furtherance of a potential tagatose-related partnership between that entity and CFB." Defs.'

---

[7] Defendants later essentially conceded the relevance of the Chengdu contract. *See* Oct. 12, 2018 Hr'g Tr. 34:1–11.

Br. 18. They further assert that Tianjin was not involved with the article and that Zhang drafted the article using a Tianjin template and cited his affiliation with Tianjin because he believed the third party "entity would take CFB's partnership offer more seriously." *Id.* at 18–19. Notwithstanding this explanation, the apparent link between Zhang and Tianjin shown in the article about Tagatose demonstrates that the circumstances Defendants now describe should have been disclosed in an interrogatory and the document itself produced. *See Browder v. City of Albuquerque*, 187 F. Supp. 3d 1288, 1298 (D.N.M. 2016) (noting that it is "not up to Defendants to decide what evidence is or is not relevant to Plaintiffs' case" because "'[t]he ultimate decision of what is relevant is not determined by a party's subjective assessment through its own perception of self-interest'" (quoting *United States ex rel. Baker v. Cmty. Health Sys., Inc.*, No. Civ. 05-279, 2012 WL 12294413, at \*11 (D.N.M. Aug. 31, 2012))).

Third, Defendants' allegation that they did not have "possession, custody, or control" of documents identified in Bonumose's request for production is belied by the fact that Defendants produced the Zhang Article to Plaintiffs on the same day that they filed their opposition brief to the instant motion. *See* Pls.' Reply Br., Decl. in Supp. ¶¶ 3–4. Defendants have not explained why they did not produce it earlier. The documents obtained by Bonumose from Virginia Tech and the absence of a convincing explanation from Defendants why they themselves did not produce these documents leave unanswered significant questions about the adequacy of Defendants' discovery responses and whether they possess additional discoverable information that has not been produced.

Finally, the information before the Court suggests that Defendants have provided incomplete and evasive discovery responses. Under Rule 37, "an evasive or incomplete disclosure, answer, or response must be treated as a failure to disclose, answer, or respond." Fed.

R. Civ. P. 37(a)(4). The record shows that Defendants have repeatedly and unequivocally told both opposing counsel and this Court that they already produced all relevant documents concerning the relationship between themselves and Tianjin. Now they represent to the Court that during the course of this case, they purportedly lost control over devices and materials that contained discoverable information. Defs.' Br. 6. Defendants assert that they advised Bonumose of this situation in their initial disclosures. *See id.* at 4 (noting that Defendants' initial disclosures advised Bonumose of "their belief that additional relevant materials were possessed by third parties, such as 'the Federal Bureau of Investigation and/or U.S. Attorney'"). This vague reference is no substitute for a forthright notice to Bonumose that the Defendants suspected, at the very least, that discoverable information had been removed from their possession or control by a third party such as Tianjin or the United States during the course of this litigation.

Additionally, Defendants have offered opaque and unconvincing reasons for not producing apparently responsive documents. They assert, correctly, that a party must have "possession, custody, or control" of documents before an obligation to produce can attach under Rule 34. *See id.* at 11. As noted above, however, Defendants produced the Zhang Article to Bonumose just prior to filing their opposition brief, *see* Decl. of Erik Stidham ¶¶ 3–5, evidencing their possession, custody, and control of this document at least by the time they filed their response. Moreover, Defendants assert that Zhang's seized materials are "subject to a strict protective order in the ongoing criminal proceeding" and that it is their understanding "they are prohibited under the terms of the protective order . . . from providing further detail or information regarding the nature or extent of the seizure. . . ." Defs.' Br. 2 & n.2. This statement begs the question what other materials or information Defendants have withheld under their belief that the protective order forbade their production. Defendants also state that "Zhang

repeatedly, but unsuccessfully, sought relief [from the protective order] for purposes of this litigation." *Id.* at 12. The order at issue was entered on July 13, 2018, by Chief Judge Urbanski in the parallel criminal matter, and it instructed that Zhang "be permitted to share with his civil counsel any and all information pre-existing on Dr. Zhang's computer, including e-mails and/or documents, and to allow civil counsel to use such documents in the pending civil case." *See* Order Granting Mot. to Clarify, *United States v. Zhang*, No. 7:17cr73, ECF No. 109. During the October 12 hearing in this civil matter, Zhang's counsel continued to express uncertainty about their obligations under the revised protective order, *see* Oct. 12, 2018 Hr'g Tr. 22:1–15, but their reluctance goes too far. Defense counsel in the criminal case sought the initial relaxing of the protective order and then sought, on multiple occasions, clarification to allow disclosure of Zhang's own materials to counsel in this civil case. *See generally* Def.'s Mots. re: Order of Mar. 5, 2018, *United States v. Zhang*, No. 7:17cr73, ECF Nos. 100, 106, 108. If counsel still had doubts about their ability to use or disclose Zhang's own materials in the civil case, they certainly could have requested further clarification from Chief Judge Urbanski.

Furthermore, it is clear that issues and evidence in the criminal and civil case overlap. Thus, the undersigned cannot countenance the notion that Chief Judge Urbanski's orders allowed Zhang's own materials to be provided to counsel for their use in his civil case, but did not also allow Zhang's counsel to disclose information and documents to the opposing side when required by the Federal Rules of Civil Procedure. *See Hickman v. Taylor*, 329 U.S. 495, 507 (1947) ("Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation."). Defendants and their counsel must disclose any improperly withheld documents and information.

Finally, Defendants argue that sanctions are inappropriate where Bonumose was not unfairly prejudiced by deficiencies in Defendants' discovery responses. Defs.' Br. 17. Defendants argue that Plaintiffs were not prejudiced because the discovery process remains open and ongoing. *See* Oct. 12, 2018 Hr'g Tr. 19:16–25. Considering the time constraints imposed by a case schedule, a party may suffer prejudice from missed opportunities to make use of discoverable information when another party delays its production. Indeed, in *Victor Stanley, Inc. v. Creative Pipe, Inc.*, the case on which Defendants rely to support their argument, the court stated that prejudice is typically found "where a party's ability to present its case or to defend is compromised." 269 F.R.D. 497, 532 (D. Md. 2010) (citing *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 593–94 (4th Cir. 2001)). Bonumose does not appear to have reached the point where its case is compromised by the Defendants' inadequate production. But the continuing delay in production of discoverable information could be prejudicial if not corrected. That is why a court should not sit on its hands and await the loss of potentially relevant, discoverable material before taking some action to ensure the parties are fulfilling their discovery obligations. Courts have broad discretion to fashion appropriate relief in order to remedy discovery abuses at various stages of a proceeding. *In re Cox Motor Express of Greensboro, Inc.*, No. 14-10468, 2016 WL 6661318, at *4 (Bankr. M.D.N.C. Nov. 4, 2016); *see also Eramo v. Rolling Stone, LLC*, 314 F.R.D. 205, 209 (W.D. Va. 2016) ("District courts generally have broad discretion in managing discovery, including whether to grant or deny a motion to compel." (citing *Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va.*, 43 F.3d 922, 929 (4th Cir. 1995)).

Here, Bonumose seeks, among other relief, the opportunity to depose Zhang as the custodian of Defendants' materials in order to uncover information about Defendants' retention efforts and identify any other discoverable material. Pls.' Reply Br. 23; *see also* Oct. 12, 2018

Hr'g Tr. 41:10–19 (identifying Zhang as the only individual qualified to testify as the custodian of Defendants' materials). The circumstances in this case warrant imposition of interim measures to compel Defendants to produce any responsive documents in their possession and respond fully to interrogatories as well as to allow Bonumose the opportunity to explore Defendants' document retention practices, assess the scope of Defendants' control over discoverable information, and ascertain whether any documents have been lost. Accordingly, the Court finds that Bonumose is entitled to depose Zhang related to his and CFB's document retention and the adequacy of their document production and discovery responses in this case. In advance of this deposition, the Court will also require Defendants to turn over any and all material in their possession, custody, or control pertaining to communications or dealings between Defendants and Tianjin since January 1, 2015, that in any way relate—directly or indirectly—to Tagatose.

The Court will take under advisement and defer ruling on the other relief sought by Bonumose, including expense-shifting sanctions. Following the deposition of Defendant Zhang, Bonumose may file a supplemental motion seeking to remedy any remaining deficiencies in Defendants' discovery responses.

### III. Conclusion and Order

For the foregoing reasons, Bonumose's motion to compel, ECF No. 160, is GRANTED IN PART. Accordingly, it is hereby ORDERED, as follows:

1. Defendants shall not delete or alter any data or documents relating to (1) Tianjin; (2) Chengdu; (3) Zhang's Tianjin email account (zhang_yh@tib.cas.cn); (4) Zhang's other email accounts; or (5) Tagatose.

2. Within fourteen days from the date of any findings of fact and conclusions of law entered by Chief Judge Urbanski in *United States v. Zhang*, No. 7:17cr73, the parties shall

schedule a deposition of Defendant Yi-Heng Percival Zhang, to take place on a mutually agreeable date. This deposition shall be conducted in accordance Rule 30(b)(6) of the Federal Rules of Civil Procedure and shall be limited to Zhang and CFB's document retention efforts, the scope of Defendants' control over discoverable information, whether any relevant documents have been lost, and whether other potentially discoverable material have not yet been produced by Defendants. The deposition shall not count towards the time allowed for any subsequent depositions of Zhang personally or CFB as an organization under Rule 30(b)(6).

3. Within fourteen days of the date of this Order, Defendants shall turn over to the Plaintiffs any and all material in their possession, custody, or control pertaining to communications or dealings between Defendants and Tianjin that in any way relate—directly or indirectly—to Tagatose covering the period of January 1, 2015, to the present. Defendants shall undertake all practicable efforts to acquire information that may have been misplaced due to the seizure of materials from Zhang, including a supplemental search of their servers for relevant information and a search of any materials stored on cloud-based systems, such as WeChat. If necessary, Defendants should retain the services of an outside vendor specializing in data recovery to obtain all relevant information. Counsel for Defendants shall apprise counsel for Bonumose as to any materials that they have not been able to access and the reason they have been unable to access that information.

4. Following the deposition of Zhang, Bonumose may file a supplemental motion seeking to remedy any remaining deficiencies in Defendants' production. Such a motion may seek any relief available under Rule 37 or any other applicable law. The Court defers ruling on the other relief sought in this motion to compel, including the request for attorney's fees.

It is so ORDERED.

20

ENTERED: October 31, 2018

Joel C. Hoppe
United States Magistrate Judge