CLERK'S OFFICE U.S. DIST. COURT
AT CHARLOTTESVILLE, VA
FILED
12/11/2018
JULIA C. DUDLEY, CLERK
BY: H. Wheeler
DEPUTY CLERK

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| BONUMOSE BIOCHEM LLC, *ET AL.*,<br><br>*Plaintiffs*,<br><br>v.<br><br>YI-HENG PERCIVAL ZHANG, *ET AL.*,<br><br>*Defendants.* | CASE NO. 3:17-cv-00033<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

This trade secrets case is before the Court to once again address the propriety of the defendants' counterclaims. The case background is well-known to the parties and was examined in a prior opinion, so the Court provides a truncated summary. The parties were involved, in some fashion, with the scientific and commercial development of an artificial sugar called tagatose. In May 2017, plaintiff Bonumose[1] sued Yi-Heng Percival Zhang (Zhang) and Cell-Free Bioinnovations, Inc. (Cell-Free) for betrayal of trade secrets and breach of contract, allegedly by surreptitiously siphoning information about tagatose to a Chinese institute.

Months later, the federal government indicted Zhang for grant fraud, and the specter of that case has hovered over this one since. Zhang and Cell-Free responded to Bonumose's lawsuit by alleging affirmative defenses and imposing so-called counterclaims against Bonumose and others. The counterpleading alleged that Edwin Rogers (Rogers) and a company called Terebinth had made, to the federal government, false allegations of grant fraud against Zhang, for the purpose of pressuring him to sign over the tagatose trade secrets to Bonumose.

Bonumose moved to strike or dismiss (or both) several of the affirmative defenses and "counterclaims." The Court granted those motions in part. As relevant here, the Court dismissed

---

[1] Bonumose's full name is Bonumose Biochem LLC. The operative complaint added Bonumose LLC as a second plaintiff. (Dkt. 150). The Court refers to both entities collectively.

the breach of contract counterclaim against Bonumose because the allegations did not show a breach. (Dkt. 115 at 16–17). The Court also struck Rogers and Terebinth, as well as the "counterclaims" lodged against only them, because (1) those claims were not made against a then-existing opposing party, rendering them procedurally deficient, and (2) defendants had not filed a proper motion to add Rogers and Terebinth to the case. (*Id*. at 17–20). The defendants have now filed an amended countercomplaint that contains three "counterclaims."

First, similar to before, there is a breach of contract claim against Bonumose for failure to meet contractual "milestones" in 2017 and 2018 to advance the commercialization of tagatose. (Dkt. 155 ¶¶ 93–110). Second, there is a breach of contract claim alleging Rogers failed to cooperate with Cell-Free and Zhang to help resolve the investigation into Zhang's alleged grant fraud. But unlike before, when Rogers was (improperly) the sole defendant, the current iteration includes Bonumose as a defendant, based on various derivative liability theories. (Dkt. 155 ¶¶ 111–19). Third and similarly, there is a claim against Rogers and Terebinth for tortious interference with Cell-Free's business. The theory there is that Rogers's supposedly false accusations of grant fraud helped scuttle Cell-Free's grant funding. Again, Bonumose is now included in this claim under an assortment of secondary theories. (Dkt. 155 ¶¶ 120–31).

Bonumose has moved to dismiss and to strike. It argues the second and third counterclaims remain procedurally deficient and should be stricken because the defendants still have not moved to add Rogers and Terebinth to the case, and because the addition of Bonumose to those claims is a groundless tactic to avoid the Court's prior ruling. Bonumose contends the first counterclaim, for breach of contract against only it, should again be dismissed, as should the other counterclaims. The Court first turns to the counterclaim against only Bonumose.

*

The defendants press the boundaries of Rule 11(b) by repleading that *Zhang* (in addition to Cell-Free) is entitled to damages for the breach of contract based on Bonumose failing to meet the 2017 and 2018 commercialization milestones. The original countercomplaint also asserted Zhang was entitled to damages for this claim. (Dkt. 50 ¶¶ 112, 118). When Bonumose contested that point, the defendants quickly conceded the issue, (dkt. 90 at 1), and the Court treated the counterclaim as proper only on behalf of Cell-Free. (Dkt. 115 at 15 n.6).

The defendants repeated this routine with their amended counterpleading and subsequent briefing. They again alleged Zhang *was* entitled to damages for this claim. (Dkt. 155 ¶¶ 119). Bonumose again contested that issue. (Dkt. 180 at 4–5). And when pressed, the defendants again immediately conceded that Zhang was *not* entitled to damages. (Dkt. 194 at 5 n.1). The defendants' actions have wasted valuable time and resources, and indicate a lack of respect for the Court and opposing counsel. Zhang will be dismissed from the first counterclaim with prejudice.

Pivoting to Cell-Free, the basis of its claim is Bonumose's failure to meet the 2017 and 2018 milestones. The 2017 milestone required Bonumose to enter into a "commercial transaction with a tagatose commercialization partner" to "support" tagatose's technological development and commercialization. The 2018 milestone required Bonumose to start a "tagatose pilot plant" capable of annually producing between one and 20 tons of tagatose.

The Court previously dismissed this claim because Cell-Free had based it only on legal conclusions and the assertion, which reversed the burden of proof, that *Bonumose* had not provided Cell-Free with evidence Bonumose had satisfied the contractual milestones. (Dkt. 115 at 16–17). Bonumose now argues that the amended counterclaim does no better and only adds

"context" to Bonumose's refusal to provide documents showing it satisfied the contract. The Court considers each milestone separately.

Cell-Free points to several paragraphs as supporting a breach of the 2017 milestone. In two of them, Cell-Free specifically alleged that Bonumose failed to enter into a commercial transaction that satisfied the 2017 milestone. (Dkt. 155 ¶¶ 81, 99). Another paragraph again relies on Bonumose's failure to produce documents, but with more elaboration: It explains that Cell-Free's demands were made within the context of formal discovery requests to Bonumose, which allegedly committed to produce all responsive documents but never produced any document bearing on the 2017 milestone. (*Id.* ¶ 85; *see id.* ¶ 84). The clear inference is that there simply was no such commercial transaction. Taking these allegations in context of the entire countercomplaint and drawing all reasonable inferences in Cell-Free's favor, the Court concludes that Cell-Free has inched this part of its claim into the zone of plausibility.

That leaves the 2018 milestone requiring the startup of a tagatose plant capable of producing over one ton of tagatose. The pleading on that score is sufficient. Cell-Free, citing documents produced in discovery, alleges that the plant lacked several scientific and technical capabilities and was "otherwise operationally and scientifically incapable of achieving the requisite annual production capacity." (Dkt. 155 ¶ 87). Bonumose derides this allegation as premised on "what defendants infer from documents produced by Bonumose," but a party is permitted to rely upon its own good-faith interpretation of the evidence in hand when fashioning its pleading. Paragraph 87 is sufficient at this stage to support a breach of the 2018 milestone.

\* \*

Next, the Court considers the motion to strike the first and second counterclaims as a recapitulation of the previously defective counterclaims against Rogers and Terebinth. As

explained above, the main difference between those claims is the addition of Bonumose as a defendant based on various secondary or alter ego liability theories. Assuming for present purposes that those theories are viable and can justify Bonumose's inclusion in those claims, there is a more basic problem. Zhang and Cell-Free still failed to move for the joinder of non-parties Rogers and Terebinth.

A counterclaim is a claim asserted "against an *opposing* party." Fed. R. Civ. P. 13(a), (b) (emphasis added). Rogers and Terebinth, however, are not opposing parties—they were not originally part of the lawsuit against Zhang and Cell-Free. Thus, to introduce them into the countercomplaint, the defendant must rely upon Rule 13(h), which provides a mechanism for a defendant to make a counterclaim against a plaintiff, and then also join to that counterclaim an absent party who the defendant thinks should be a counterclaim co-defendant. As the Court's prior opinion explained:

> '[C]ourts generally have interpreted Rule 13(h) as authorizing the joinder of parties only for the purpose of adjudicating counterclaims . . . that have *already been interposed* in the action or that are being asserted *simultaneously with the motion to add new parties*.' 6 Wright & Miller, *Fed. Prac. & Proc.* § 1434 (Westlaw 3d ed. Apr. 2018) (emphasis added). Neither condition was satisfied here. Zhang and Cell-Free have not moved for joinder, and their looping in of Rogers and Terebinth was not based on already-interposed counterclaims.

(Dkt. 115 at 18). The Court thus held that Cell-Free and Zhang needed to move for the addition of Rogers and Terebinth to the case. *See* 6 Wright & Miller, *Fed. Prac. & Proc.* § 1434 (Westlaw 3d ed. Apr. 2018) ("the general practice is to obtain a court order to join an additional party"); *A.L. Williams & Assocs., Inc. v. D.R. Richardson & Assocs., Inc.*, 98 F.R.D. 748, 753 (N.D. Ga. 1983) (compiling cases for proposition that nonparties "cannot be subject to a counterclaim absent a proper motion to join them").

That ruling is now the law of the case. *See Carlson v. Boston Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017) ("The law-of-the-case doctrine provides that in the interest of finality, when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case."). Despite the clear prior ruling, Zhang and Cell-Free consciously chose to proceed *in the very same manner* the Court previously rejected: Plead first, and argue about the propriety of adding Rogers and Terebinth later. Indeed, as part of this inverted order of operations, Cell-Free and Zhang include in their opposition brief a perfunctory request that the Court treat the opposition brief as a motion for leave to join Rogers and Terebinth. (Dkt. 193 at 8). In addition to ignoring the Court's prior ruling that such a motion must be submitted *before* filing a pleading that joins non-parties, this approach flaunts the standing rules of this district, which set the requirements for filing formal motions and briefs, as well as the resulting briefing schedule. *See* W.D. Va. Local Civ. R. 11(c). In sum, Rogers and Terebinth will be stricken from the countercomplaint with prejudice.

\* \* \*

Without Rogers and Terebinth, technically the latter two counterclaims remain against Bonumose. But those claims are substantively deficient as to it.

Take the second counterclaim, for the alleged breach of Rogers's commitment to cooperate with "any and all reasonable requests related to a resolution of the" then-pending federal grant fraud investigation. (Dkt. 65-4 at 4). Based on the text of the contract, there is no argument whatsoever that Bonumose had such a duty—the obligation was plainly Rogers's and his alone. That disconnect is fatal to a breach of contract claim. *See Filak v. George*, 267 Va. 612, 619 (Va. 2004).

To ward off this obvious conclusion, Cell-Free and Zhang offer a scattershot set of

theories they refer to as liability "both directly and vicariously under alter-ego and respondeat superior/agency doctrines." (Dkt. 194 at 7). The Court is not persuaded.

Respondeat superior is a tort doctrine, not one of contract. Indeed, the defendants' cited authorities involve tort claims, (dkt. 194 at 9), and Bonumose identifies cases affirming the principle that respondeat superior does not apply to contract claims. *See Henderson v. White's Truck Stop, Inc.*, No. 6:08-CV-00042, 2011 WL 1627120, at *7 (W.D. Va. Apr. 29, 2011); *Powers v. Hurd Const. Co.*, 50 Va. Cir. 96 (Bedford Cnty. Cir. Ct. 1999).

What's more, although the defendants alleged that Rogers is the *current* CEO of Bonumose, they do not allege that he was the CEO of Bonumose, or otherwise an employee of it, *at the time* of the allegedly unlawful actions. That is necessary to establish respondeat superior liability. *See Sayles v. Piccadilly Cafeterias, Inc.*, 242 Va. 328, 332 (Va. 1991). That defect undercuts not only the second counterclaim but also the third, alleging that Bonumose tortiously interfered with Cell-Free's contractual expectancies.

The defendants' invocation of an alter ego theory also falters. It is effectively a reverse veil-piercing argument, rather than the traditional veil-piercing situation of a shareholder bearing responsibility for the acts of the company. Veil-piercing of any stripe in Virginia is disfavored: It is "an extraordinary measure that is permitted only in the most egregious circumstances" and, consequently, has "very stringent" standards. *Informatics Applications Grp., Inc. v. Shkolnikov*, 836 F. Supp. 2d 400, 426 (E.D. Va. 2011); *e.g.*, *C.F. Tr., Inc. v. First Flight Ltd. P'ship*, 306 F.3d 126, 134 (4th Cir. 2002) ("Virginia courts clearly regard corporate veil-piercing as an extraordinary remedy, permitted only in exceptional circumstances when necessary to promote justice."); *C.F. Tr., Inc. v. First Flight L.P.*, 266 Va. 3, 12 (Va. 2003). Among other things, the claimant must prove that an underlying fraud or legal wrong was committed through the use of

an alter ego, "alias, stooge, or dummy." *C.F. Trust*, 306 F.3d at 135.

The countercomplaint falls short of the standards in Virginia for reverse veil-piecing. The allegations consist mainly of repetitive, conclusory allegations that Bonumose was the alter ego of Rogers and that Rogers was acting on behalf of and in furtherance of the interest of Bonumose. It is also briefly alleged that Bonumose was created to receive Cell-Free's intellectual property (which itself is not an impropriety) and that, "on information and belief," Rogers was Bonumose's largest shareholder. (*E.g.*, dkt. 155 ¶¶ 41, 43, 44, 56–57, 60, 64–66, 69,[2] 114).

Courts do not hesitate to dismiss veil-piercing theories based on such marginal allegations like the ones here, so the Court will follow suit. *William v. AES Corp.*, 28 F. Supp. 3d 553, 563 (E.D. Va. 2014); *Informatics Applications Grp., Inc. v. Shkolnikov*, 836 F. Supp. 2d 400, 426 (E.D. Va. 2011); *Medici888, Inc. v. Rileys Ltd.*, No. 2:12CV317, 2013 WL 5533235, at *6 (E.D. Va. Oct. 3, 2013).

In sum, the second and third counterclaims are not viable against Bonumose and will be dismissed with prejudice.[3]

---

[2] The defendants allege in paragraph 69 that, *in the contract*, Rogers agreed to cooperate—*on behalf of and in furtherance of Bonumose's interests*—to help end the federal investigation. The emphasized part of that allegation is wholly unsupported by the actual contract, which includes no indication that the relevant provision bound or was made on behalf of anyone other than Rogers individually. (Dkt. 65-4 at 1, 4).

[3] Because the counterclaims are deficient on any theory of derivative liability, the Court does not reach Bonumose's arguments that the third counterclaim fails to allege a cognizable business expectancy and proximate cause.
Moreover, that the latter two counterclaims would not survive against only Bonumose provides an alternative ground for striking Rogers and Terebinth: Without Bonumose, the latter counterclaims are—as the Court previously held—not counterclaims at all because they are not against an opposing party.

\* \* \* \*

Bonumose's motion to strike will be granted in part, as Rogers and Terebinth will be stricken with prejudice. The motion to dismiss will be granted in part. The second and third counterclaim will be dismissed with prejudice, and the first counterclaim will remain, with Cell-Free as the only plaintiff. An appropriate order will issue.

Entered on this __11th__ day of December, 2018.

_____
NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE